Sonja Renee SMITH, as Administratrix of the Estate of Rufus A. Smith, Sr., Deceased, as Guardian Ad Litem for the minor children of the Deceased, and individually; and Marcus Smith, a minor; Netra Smith, a minor; Anthony Smith, a minor; Jarren Smith, a minor; Sherri Smith, a minor; Arkillius Smith, a minor; and Tashieka Smith, a minor, Rufus Anthony Smith, Jr., individually, Plaintiffs-Appellants,

v.

The CITY OF FONTANA, a municipal corporation; Robert Mejia; Larry Smith; Nathan A. Simon; Charles A. Koehler; Ben Abernathy; Bill Freeman; Donald F. Day; William Fragness; Jack Ratelle; John M. Rager; and Kathy Wilson, Defendants-Appellees.

No. 82–5896.

United States Court of Appeals,
Ninth Circuit.

Submitted July 7, 1983.*

Resubmitted May 27, 1986.

Decided Jan. 6, 1987.

As Amended on Denial of Rehearing
and Rehearing En Banc
May 5, 1987.

As Amended July 7, 1987.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

Andrena G. Dancer, Upland, Cal., for plaintiffs-appellants.

Bradley C. Withers, David L. Shain, Cotkin, Collins & Koltz, Los Angeles, Cal., for defendants-appellees.

Before TANG,** ALARCON and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Plaintiffs filed this civil rights action under 42 U.S.C. § 1983 (1982) and other provisions of the Civil Rights Act. The district court dismissed their complaint for failure to state a claim on the ground that relief under section 1983 was barred by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom. Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). We reverse on the basis of recent Supreme Court and Ninth Circuit authority holding that *Parratt* and its progeny are inapplicable to civil rights actions asserting substantive as opposed to purely procedural due process violations.[1]

## I

## FACTS AND PROCEDURAL HISTORY

According to the plaintiffs' complaint, City of Fontana police officers Robert Me-

---

** Judge Tang was selected to sit on this panel following the death of the Honorable William G. East, Senior United States District Judge for the District of Oregon, originally sitting by designation.

1. We temporarily vacated submission of the plaintiffs' appeal in order to await the decision of the Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and the decisions of an en banc panel of this court in *Piatt v. MacDougall*, 773 F.2d 1032 (9th Cir.1985) (en banc), *Bretz v. Kelman*, 773 F.2d 1026 (9th Cir.1985) (en banc), and *Haygood v. Younger*, 769 F.2d 1350 (9th Cir.1985) (en banc), *cert. denied sub nom. Cranke v. Haygood*, — U.S. —, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986).

jia and Larry Smith responded to a call concerning a domestic quarrel at the apartment of Rufus A. Smith, Sr. on May 27, 1982. Encountering Mr. Smith in his parking lot, the officers asked him to place his hands on his head and detained him in order to discuss the alleged incident. As Mr. Smith attempted to comply, Officer Smith without provocation clenched him from behind in a chokehold and began to drag him backwards. While Mr. Smith was thus being held, Officer Mejia without provocation began to knee him in the groin and strike him in the face. Though Mr. Smith was unarmed and offered only instinctive resistance against the blows to his groin and face, Officer Smith drew his duty revolver and shot Mr. Smith in the back. Mr. Smith died approximately one and a half hours later during emergency surgery. Mr. Smith was a black man.

Plaintiffs brought suit in federal district court under 42 U.S.C. § 1983 [2] against officers Mejia and Smith, the City of Fontana, and various city officials,[3] claiming that the defendants' conduct violated the First, Fourth, Fifth, and Eighth Amendments and both the due process and equal protection clauses of the Fourteenth Amendment. Plaintiff Sonja Smith, suing in her capacity as administratrix of the decedent's estate, seeks to vindicate Mr. Smith's personal civil rights. She and the other plaintiffs also sue in their capacities as adult or minor children of Mr. Smith, seeking to vindicate their own personal rights.

Relying on the then recently-decided *Parratt v. Taylor* and *Rutledge v. Arizona Bd. of Regents,* the district court dismissed the action in its entirety for failure to state a claim on the ground that California's post-deprivation remedies for violations of state tort law were adequate to protect the plaintiffs from suffering any cognizable constitutional injury.[4]

## II

## LIMITATIONS ON *PARRATT* AND ITS PROGENY

■ In *Parratt v. Taylor,* the Supreme Court held that when a state actor negligently deprived a prisoner of a minor property interest through a "random and unauthorized" act, the state's provision of an adequate post-deprivation remedy satisfied the constitutional requisite of procedural due process. 451 U.S. at 541–44, 101 S.Ct. at 1915–17. The district court apparently understood *Parratt* to preclude *any* section 1983 action based on an official's "random and unauthorized" deprivation of a constitutional right when a state provides adequate post-deprivation remedies. However, *Parratt* and its progeny merely determine when a state's post-deprivation remedies are adequate to protect a victim's *procedural* due process rights. The *Parratt* line of cases does not focus on the relevance of procedural protections to alleged violations of *substantive* constitutional rights. As Justice Stevens recently noted in his concurrence in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the due process clause of the Fourteenth Amendment "is the source of three different kinds of constitutional protection. First, it incorporates specific provisions de-

2. 42 U.S.C. § 1983 provides in pertinent part:
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. These city officials include the Mayor, Mayor Pro-Tem, Chief of Police, City Manager, City Attorney, City Personnel Director, and members of the City Council. The complaint alleges that they all are responsible either for developing

and enforcing adequate standards for the hiring, training, and supervising of police officers or for rendering legal advice to other officials charged with such supervision.

4. The plaintiffs also asserted claims for relief under 42 U.S.C. §§ 1981, 1985(2) and 1985(3) and joined several pendent state claims. The district court treated separately the section 1985 claims, holding that based on the facts alleged in the complaint the plaintiffs "can[not] state a cause of action with respect to conspiracy." The plaintiffs apparently do not appeal this part of the district court's ruling, and hence we do not review it. The district court dismissed the pendent state claims as well.

fined in the Bill of Rights." 106 S.Ct. at 677 (separate opinion of Stevens, J., concurring in the judgment). Actions which violate these specific substantive protections of the Bill of Rights lie outside the scope of *Parratt* because the constitutional violation is complete at the moment the action or deprivation occurs, rather than at the time the state fails to provide requisite procedural safeguards surrounding the action. Hence, *Parratt* is inapplicable to alleged violations of one of the substantive provisions of the Bill of Rights, such as the Fourth Amendment. *See Daniels*, 106 S.Ct. at 678 (separate opinion of Stevens, J.) ("If the claim [concerns a] ... violation of one of the specific constitutional guarantees of the Bill of Rights[ ], a plaintiff may invoke § 1983 regardless of the availability of a state remedy."); *see also Robins v. Harum*, 773 F.2d 1004, 1009 (9th Cir.1985) (*Parratt*'s focus on post-deprivation remedies simply "is not applicable to a claim, such as the instant excessive use of force claim, brought under the Fourth Amendment").

The due process clause also "contains a substantive component, sometimes referred to as 'substantive due process,' which bars certain arbitrary government actions 'regardless of the fairness of the procedures used to implement them.'" *Daniels*, 106 S.Ct. at 678 (separate opinion of Stevens, J.) (citation omitted). Writing for the Court in *Daniels*, Chief Justice Rehnquist recently reaffirmed this understanding that the due process secures both procedural *and* substantive constitutional protections:

> By requiring the government to follow appropriate procedures when its agents decide to "deprive any person of life, liberty, or property," the Due Process Clause promotes fairness in such decisions. And by barring certain government actions regardless of the fairness of the procedures used to implement

them, it serves to prevent governmental power from being "used for purposes of oppression."

*Id.* at 665 (citations omitted). Like specific provisions of the Bill of Rights, "substantive due process is violated at the moment the harm occurs [and therefore] the existence of a post-deprivation state remedy should not have any bearing on whether a cause of action exists under § 1983." *Rutherford v. City of Berkeley*, 780 F.2d 1444, 1447 (9th Cir.1986). *See Shah v. County of Los Angeles*, 797 F.2d 743, 746 (9th Cir.1986); *McRorie v. Shimoda*, 795 F.2d 780, 785–86 (9th Cir.1986); *Gaut v. Sunn*, 792 F.2d 874, 876 (9th Cir.1986); *Mann v. City of Tucson*, 782 F.2d 790, 792–93 (9th Cir.1986); *see also Daniels*, 106 S.Ct. at 678 (separate opinion of Stevens, J.).

Only claims lying within the third category of constitutional protections—procedural protections against wrongful deprivations of life, liberty or property—fall within the scope of the *Parratt* doctrine. Constitutional violations of procedural due process occur not at the moment of the deprivation, but only when the State fails to provide adequate procedures to protect against wrongful deprivations. *Id.* at 678–79.

Dismissal of the plaintiffs' section 1983 claims was therefore improper to the extent that the complaint stated valid claims for relief for violations of substantive rather than procedural constitutional rights.[5] We address each of the constitutional claims asserted by each of the plaintiffs in turn, reviewing the claims *de novo*. *Guillory v. County of Orange*, 731 F.2d 1379, 1381 (9th Cir.1984). In conducting this review we presume that the facts alleged in the complaint are true and construe them in the light most favorable to the appellant. *North Star Intern. v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir.1983).

---

5. Liability under section 1983 lies where (1) "the conduct complained of was committed by a person acting under color of state law; and (2) ... this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912. There is no dispute here that the alleged conduct by officers

Mejia and Smith satisfies the "under color of state law" requirement, as they "were clothed with the legitimacy of the government and were purporting to act thereunder." *Haygood*, 769 F.2d at 1354. We thus focus solely on whether the plaintiffs have been deprived of any constitutional rights.

Dismissal is improper " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Franklin v. Oregon,* 662 F.2d 1337, 1343 (9th Cir.1981) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)).

## III

## FOURTH AMENDMENT CLAIMS

■ The estate's first legal theory is that the officers' actions and the City's policies violated Mr. Smith's Fourth Amendment rights. In *Tennessee v. Garner,* the Supreme Court held that "apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." [6] 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Where a victim of a seizure alleges that officers unreasonably employed excessive force under the circumstances in order to detain or subdue her, the "reasonableness of force should be analyzed in light of such factors as the requirements for the officers' safety, the motivation for the arrest [or detention], and the extent of the injury inflicted." *McKenzie v. Lamb,* 738 F.2d 1005, 1011 (9th Cir. 1984). Hence, an allegation that force used during a personal seizure was excessive as measured by these factors states a claim for relief under section 1983 predicated upon the Fourth Amendment. *See Garner,* 471 U.S. at 9, 105 S.Ct. at 1700 (use of deadly force to prevent escape constitutes an unreasonable seizure unless the officer has probable cause to believe that the suspect poses a threat of serious harm to the officer or others); *Robins,* 773 F.2d at 1008–10 (allegation that police used excessive force while transporting plaintiffs to police station after arrest states a section

1983 claim for a Fourth Amendment violation); *MacDonald v. Musick,* 425 F.2d 373, 377 (9th Cir.) (defendant asserting that his arrest was unlawful, that he had a right to resist, and that he sustained injuries as a result of his resistance stated claim under section 1983), *cert. denied,* 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); *see also Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502 (11th Cir.1985) (alleged beating and killing of suspect during process of detention stated a section 1983 claim for Fourth Amendment violation), *cert. denied,* —— U.S. ——, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). The defendants candidly concede that under this case law the complaint's allegations that the decedent was "unarmed and helpless, and in no way posed a threat to the safety of [the officers or] any other persons," *Complaint,* at ¶ 30, and that the defendants' acts were "unwarranted, ·cruel, inhuman, unjustifiable, and excessive," *id.,* at ¶ 33, are sufficient to state a claim under the Fourth Amendment. *See Appellees' Supplemental Brief,* at 2.

■ The estate can assert this claim on Mr. Smith's behalf. Under section 1988, a section 1983 claim that accrued before death survives the decedent when state law authorizes a survival action as a "suitable remed[y] ... not inconsistent with the Constitution and laws of the United States...." 42 U.S.C. § 1988 (1982). *See Robertson v. Wegmann,* 436 U.S. 584, 588–90, 98 S.Ct. 1991, 1994–95, 56 L.Ed.2d 554 (1978). Under California's survival statute, "no cause of action [is] lost by reason of the death of any person but may be maintained by ... his ... administrator." Cal. Prob.Code § 573 (West Supp.1986).[7] Therefore, Mr. Smith's Fourth Amendment claim survives his death and can be main-

---

**6.** The Fourth Amendment, made applicable to the states through the Fourteenth Amendment in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), states in part that the "right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." *U.S. Const.* amend. IV.

**7.** As an exception to this rule, survival actions may not be brought in California if the decedent's death is instantaneous with her legal injury, *see Pease v. Beech Aircraft,* 38 Cal.App.3d 450, 459–60, 113 Cal.Rptr. 416, 422–23 (1974), but the complaint here alleges that Mr. Smith died approximately one and one-half hours after he was shot.

tained by plaintiff Sonja Smith in her capacity as administratrix of his estate.[8]

■ Mr. Smith's children, suing in their individual capacities, also assert a claim for relief under the Fourth Amendment. However, the Supreme Court has held that "Fourth Amendment rights are personal rights which ... may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). The children were not directly subjected to the excessive use of state force and therefore cannot maintain personal causes of action under section 1983 in reliance on this Fourth Amendment theory.

## IV

## SUBSTANTIVE DUE PROCESS CLAIMS

### A. The Estate's Substantive Due Process Claim

■ The estate asserts a section 1983 claim under the due process clause of the Fourteenth Amendment. The district court erred in construing this claim as alleging only a *procedural* due process violation because egregious government conduct in the form of excessive and brutal use of physical force constitutes a violation of *substantive* due process. *See Rutherford*, 780 F.2d at 1446 (allegation of unprovoked assault and battery by police officers states a claim for violation of substantive due process); *see also Shah*, 797 F.2d at 746 (" 'intentional unjustified, [and] unprovoked' assault by a prison guard on a prisoner may be a violation of substantive due process") (citation omitted); *McRorie*, 795 F.2d at 785 (allegation of intentional prison guard brutality states cause of action for substantive due process violation); *Gaut*,

792 F.2d at 875 (prison beatings which "shock the conscience" are actionable as substantive due process violations); *Meredith v. Arizona*, 523 F.2d 481, 482–84 (9th Cir.1975) (assault and battery by prison guard violates the right to liberty). As with the Fourth Amendment claim, resolving a substantive due process claim requires courts to balance several factors focusing on the reasonableness of the officers' actions given the circumstances. In *Rutherford*, we held that

> "in determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm."

780 F.2d at 1446 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)). Given its focus on these factors, the complaint clearly alleges that Mr. Smith's substantive due process rights were violated and hence the estate pleads a valid due process claim under section 1983.

### B. The Children's Personal Substantive Due Process Claim

■ The children also plead that the defendants violated their personal "rights not to be deprived of the life of their father and not to be deprived of his love, comfort, and support...." *Complaint*, at ¶ 40. This claim raises the threshold question whether the children's interest in the continued companionship and society of their

---

8. We express no view here as to whether the remedies authorized by California's survival statute, pecuniary and punitive damages but not damages for pain and suffering, are too limited to be "consistent" with the Civil Rights Act's statutory scheme and whether federal law, therefore, provides an independent source of recovery for a broader array of damages. *See generally Robertson*, 436 U.S. at 594, 98 S.Ct. at 1997 (explicitly holding question open); *Guyton v. Phillips*, 532 F.Supp. 1154, 1165–67 (N.D.Cal. 1981) (interpreting federal law as allowing es-

tate to recover compensation for decedent's pain and suffering and for his loss of life itself even though such compensation is unavailable under California's survival statute); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1187–90 (7th Cir.1985) (holding Illinois' limited recovery under survival and wrongful death statutes inconsistent with federal law and authorizing awards of damages beyond those expressly provided); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1235–41, 1250–53 (7th Cir.1984) (same conclusion with respect to Wisconsin law).

father is a cognizable liberty interest under the due process clause.

The Supreme Court has yet to address whether and when the government's act of taking the life of one family member deprives other family members of a cognizable liberty interest in continued association with the decedent. Our court, however, has held that parents can challenge under section 1983 a state's severance of a parent-child relationship as interfering with their liberty interests in the companionship and society of their children. In *Morrison v. Jones*, 607 F.2d 1269 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980), we held that when county officials removed a mentally ill boy from his mother's custody on the ground that she could not adequately care for him, the mother could bring a section 1983 action for damages to vindicate her "substantive familial rights that have long been considered the 'basic civil rights of man.' " *Id.* at 1276 (quoting *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942)). More recently, in *Kelson v. City of Springfield*, 767 F.2d 651 (9th Cir.1985), we held that parents who alleged that school officials negligently allowed their son to commit suicide could maintain a section 1983 action to vindicate "their fundamental parental rights guaranteed by the Ninth Amendment ... and ... their right to association with their son guaranteed by the First Amendment." *Id.* at 653. After examining a long line of Supreme Court cases stressing "the importance of familial bonds" and identifying the many times the Supreme Court has interpreted the due process clause to protect the interests of parents "in maintaining a relationship with their children," *id.* at 654, we concluded that "a parent has a constitution-

ally protected liberty interest in the companionship and society of his or her child." *Id*, at 655.[9]

[7] We now hold that this constitutional interest in familial companionship and society logically extends to protect children from unwarranted state interference with their relationships with their parents. The companionship and nurturing interests of parent and child in maintaining a tight familial bond are reciprocal, and we see no reason to accord less constitutional value to the child-parent relationship than we accord to the parent-child relationship.[10] *Cf. Roberts v. United States Jaycees*, 468 U.S. 609, 619–20, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984) ("Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.").

We recognize that the Supreme Court cases on which *Morrison* and *Kelson* relied to define the substantive liberty interest in a parent-child relationship involved suits by parents of minor children. The state's interference with the parent-child relationship therefore threatened not only the parents' interest in the companionship of their children, but also the parents' constitutionally protected interest in raising their children. *See, e.g., Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (natural parents entitled to procedural due process at a state-initiated parental rights termination proceeding); *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (parents entitled to procedural due process prior to state termination of parental status on grounds of unfitness); *see also Pierce v.*

---

**9.** After *Kelson* was decided, the Supreme Court ruled that the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels*, 106 S.Ct. at 663. Although *Daniels* overrules *Kelson's* implicit holding that a section 1983 claim can be based on mere negligence, *Kelson's* determination that parents have a constitutionally protected liberty interest in their continued association with their children remains good law.

**10.** Indeed, if any distinction can be drawn, one might even argue that a child has a *greater* interest in the continued life of a biological parent than vice versa because often the parent has or can have other biological children, whereas a child can never replace a biological parent.

*Society of Sisters,* 268 U.S. 510, 534–35, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (requirement that children attend public school unreasonably interferes with parents' liberty "to direct the upbringing and education of children under their control").

■ When, as in this case, a child claims constitutional protection for her relationship with a parent, there is no custodial interest implicated, but only a companionship interest. This distinction between the parent-child and the child-parent relationships does not, however, justify constitutional protection for one but not the other. We hold that a child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest. Our view finds support in *Strandberg v. City of Helena,* 791 F.2d 744 (9th Cir.1986), where parents brought a section 1983 claim against the state for negligently allowing their son to commit suicide in jail. The parents' interest in directing the upbringing of their son was not implicated because the son was twenty-two years old and no longer a minor; the parents therefore "had not been deprived of any constitutional *right to parent." Id.* at 748 n. 1 (emphasis added). However, the parents were able to "claim a violation of their fourteenth amendment due process rights in the companionship and society of the decedent." *Id.* at 748. Thus, the familial relationship, and not the more narrow custodial interest of the parents, gave rise to the due process action. *See also Bell,* 746 F.2d at 1245 (parent can assert personal due process claim for death of adult child because the "Supreme Court's decisions protect more than the custody dimension of the parent-child relationship"); *cf. Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (extending Supreme Court principles protecting the parental role in raising children to protect a broader set of relationships within the family structure and invalidating under substantive due process a zoning ordinance

preventing grandmother and grandson from living together in certain circumstances).[11]

Our conclusion also finds compelling support in the legislative history of section 1983's precursor, the Ku Klux Klan Act of 1871. Representative Butler described the Act "as a remedy for wrongs, arsons, and murders done. This is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; *to the children whose father has been killed, as a remedy." Cong. Globe,* 42d Cong., 1st Sess. 807 (1871) (emphasis added). Indeed, the "legislative history makes a *clearer* case for recovery to the child due to loss of support or loss of society and companionship of a parent ... [than for] the parent's rights [for recovery] vis-a-vis the loss of a child." *Bell,* 746 F.2d at 1244 (emphasis added). Both case law and legislative history thus lead us to the conclusion that Mr. Smith's adult and minor children had a cognizable liberty interest in their relationship with their father.

■ This leaves us with the question of whether the alleged interference with the children's protected liberty interest rises to the level of a substantive, as opposed to a procedural, due process violation. As we have already noted, whether a particular interference with a liberty interest constitutes a substantive or a procedural due process violation depends on whether the interference was "for purposes of oppression," *Daniels,* 106 S.Ct. at 665 (citation omitted), rather than for the purpose of furthering legitimate state interests. When the state has a legitimate interest in interfering with a parent-child relationship, for example, where the best interest of the child arguably warrants termination of the parent's custodial rights, the state may legitimately interfere so long as it provides "fundamentally fair *procedures." Kramer,* 455 U.S. at 754, 102 S.Ct. at 1395 (emphasis added). However, the state has no

---

**11.** We intimate no view as to whether the familial relationship between siblings is sufficiently constitutionally protected as to allow one sibling to assert a section 1983 action based on the death of the other. *Compare Trujillo v. County*

*Commissioners,* 768 F.2d 1186 (10th Cir.1985) (siblings can bring section 1983 claims alleging that wrongful death interfered with liberty interest in companionship), *with Bell,* 746 F.2d 1205 (siblings cannot do so).

legitimate interest in interfering with this liberty interest through the use of *excessive* force by police officers. Such an action constitutes the very sort of affirmative abuse of government power which the substantive protections of the due process clause are designed to prevent. Therefore, the same allegation of excessive force giving rise to Mr. Smith's substantive due process claim based on his loss of life also gives the children a substantive due process claim based on their loss of his companionship.[12] Because on these facts their claim invokes the protections of substantive due process, the claim falls outside the scope of the *Parratt* doctrine.

## V

### EQUAL PROTECTION CLAIMS

■■■■ The complaint alleges that officers Smith and Mejia used excessive force to subdue decedent Mr. Smith because he was black. The complaint further alleges that the officers acted pursuant to an unwritten City policy authorizing the use of excessive force, particularly against black persons, and that the City also had a policy of failing to train and supervise police officers concerning the use of deadly force.[13] If these facts are proved, Mr. Smith was "personally denied equal treatment solely because of [his] membership in a disfavored group." *Heckler v. Mathews,* 465 U.S. 728, 740, 104 S.Ct. 1387, 1395, 79 L.Ed.2d 646 (1984). Accordingly, the estate may maintain a survival action against all defendants for damages suffered by Mr. Smith as a result of the shooting incident.[14]

The children also assert an equal protection challenge, focusing not on the shooting incident itself,[15] but rather on the possibility that similar race-based incidents will oc-

---

12. One circuit has imposed a special state-of-mind requirement for a due process violation when the liberty interest giving rise to the section 1983 action is the interest in continued familial companionship. In *Trujillo,* the Tenth Circuit likened this liberty interest to the First Amendment interest in free association and noted that to state a claim for interference with this First Amendment interest, a plaintiff must allege that the challenged statute or official action was directed at discouraging protected expression or association, 768 F.2d at 1189–90. The court then held that plaintiffs who bring a section 1983 claim based on interference with familial companionship similarly must allege that the state official acted with the specific motive of severing the parent-child relationship in some manner, for example, terminating a parent's custodial rights. *See Trujillo,* 768 F.2d at 1190. However, *Trujillo* imposed this requirement of specific intent on a claim of interference with the familial relationship in order to avoid throwing open the judicial floodgates to claims based on merely negligent acts. *Id.* Now that *Daniels* has closed this potential floodgate by requiring the act causing the deprivation to have been more than simply negligent, *see supra* note 11, *Trujillo's* additional focus on the state actor's motivation is no longer necessary to serve its purpose. We therefore decline to follow *Trujillo.* As long as the state official's *action* which deprived the plaintiffs of their liberty was more than merely negligent, the plaintiffs can state a section 1983 claim without further alleging that the official was trying to break up their family. We note that we did not adopt a specific intent requirement in *Kelson. See also Bell,* 746 F.2d 1205 (not imposing specific intent state-of-mind requirement).

13. Specifically, the two unwritten policies averred in the complaint are the failure of the institutional defendants to enforce departmental regulations, thereby creating an "atmosphere of lawlessness," and the "failure of the defendants to provide training, instruction and supervision regarding the lawful use of an officer's service revolver and the use of excessive and deadly force." *Complaint,* at ¶¶ 49–50. Both of these allegations are sufficient to satisfy the definition of an "official policy" giving rise to municipal liability as articulated by the Supreme Court in *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). *See Bergquist v. County of Cochise,* 806 F.2d 1364, 1370 (9th Cir.1986) ("policy of gross negligence in training or supervision gives rise to § 1983 liability").

14. The complaint sufficiently alleges a causal relationship between the City's unconstitutional policies and the officers' actions to satisfy the Supreme Court's requirement that plaintiffs allege (and later prove) an "affirmative link between the occurrence of the ... police misconduct and the adoption of any policy or plan by ... [the officials]—express or otherwise—showing their authorization or approval of such misconduct." *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

15. We do not address the difficult question whether the children could state a claim for damages under the equal protection clause based on the police shooting of their father. We do not interpret their complaint as pleading this claim, and they have not raised it in their briefs filed with this court.

cur in the future. Specifically, the children allege that the propensity of officers Mejia and Smith to employ excessive force against black residents in the future and the City's and supervisory officials' sanction and encouragement of such a practice by all City police officers threaten the physical security of all black people within the jurisdiction of the Fontana Police Department. Fearing future injury at the hands of the Fontana police because of their race, the children seek injunctive relief against the continued employment of officers Mejia and Smith in any capacity where the officers would be armed and seek a declaratory judgment that the City's discriminatory policy is unconstitutional.

■ We do not reach the question whether these facts, if proved, would state a claim under the equal protection clause, for we find ourselves without jurisdiction to consider such a claim. In *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the Supreme Court explained that Article III's "case or controversy" requirement precludes federal courts from considering claims for equitable relief unless the plaintiffs can demonstrate that their threat of future injury by the defendants is "both 'real and immediate,' not 'conjectural or hypothetical.'" 461 U.S. at 102, 103 S.Ct. at 1665 (citations omitted).[16] It is difficult to characterize the point at which a threat of future injury becomes "credible," and the caselaw defies easy generalization. *See, e.g., Sample v. Johnson*, 771 F.2d 1335, 1340–43 (9th Cir. 1985) (canvassing cases). Nevertheless, it is clear in this case that the children have failed to meet this burden with respect to either their claim for injunctive relief against officers Smith and Mejia or their claim for declaratory relief against the City.[17]

The Supreme Court has held that plaintiffs seeking equitable relief from assertedly unconstitutional police practices can satisfy this case or controversy requirement by alleging enough specific instances of past unconstitutional behavior to establish a "persistent pattern of police misconduct" from which a future threat can be inferred. *Allee v. Medrano*, 416 U.S. 802, 815 (1974). Here, however, the complaint cites no examples of police abuse other than the one causing the death of Mr. Smith. Rather, the complaint merely alleges that black citizens "have consistently been the targets of unpunished, arbitrary, and discriminatory use of excessive and deadly force by Fontana police officers." *Complaint*, at ¶ 49. This statement is too conclusory to adequately establish a prior pattern of misconduct from which we can infer a credible threat of future injury at the hands of Fontana police officers. *A fortiori*, it fails to establish a credible threat of recurrent injury inflicted specifically by officers Smith and Mejia. *See Lyons*, 461 U.S. at 100, 103 S.Ct. at 1664 (claim of future injury too speculative where complaint alleged that police policy of applying chokeholds had resulted in twelve deaths and five more deaths occurred after complaint was filed).

The Supreme Court has held that plaintiffs seeking equitable relief can alternatively satisfy this case or controversy re-

---

**16.** We note that the Supreme Court, both in *Lyons* and other opinions, has characterized this Article III requirement in several different ways. *See, e.g., Lyons*, 461 U.S. at 101, 103 S.Ct. at 1665 ("case or controversy" requirement); *id.* at 105, 103 S.Ct. at 1667 ("standing" to seek injunction); *id.* at 111 ("prerequisite of equitable relief"). *See also Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983) (referring separately to the "propriety of declaratory and injunctive relief" and "standing to seek such relief" but concluding that both are satisfied by plaintiff's showing of "credible threat" of recurring injury). Despite this confusion of terminology, however, it is clear that the Court considers a satisfactory allegation of a credible threat of future injury to be a prerequisite to the exercise of federal jurisdiction over a claim for injunctive relief.

**17.** While *Lyons* itself concerned a claim for injunctive and not merely declaratory relief, 461 U.S. at 98–99, the Supreme Court seems to employ the same threshold test of likelihood of recurring injury when evaluating claims for declaratory relief as it does when evaluating claims for injunctive relief. *See, e.g., Ashcroft v. Mattis*, 431 U.S. 171, 172 & n. 2, 97 S.Ct. 1739, 1740 & n. 2, 52 L.Ed.2d 219 (1977) (per curiam); *Golden v. Zwickler*, 394 U.S. 103, 108–10, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

quirement of likely future injury by both alleging the existence of an unconstitutional policy and "credibly alleg[ing] that [they] faced a realistic threat from the future application of the City's policy." *Lyons,* 461 U.S. at 107 n. 7, 103 S.Ct. at 1668 n. 7. In *Lyons,* for example, the Supreme Court indicated that Lyons would have to allege that he was likely to engage in some act bringing him into contact with the police in a situation where the City's policy would lead the police to apply a chokehold. *Id.* at 105–108 & n. 7, 103 S.Ct. at 1666–68 & n. 7. Here, the plaintiffs do make the general allegation that the City's unconstitutional policies authorize and encourage all police officers to use excessive force, especially against black persons. They further allege that the continued employment of officers Smith and Mejia "presents a clear and present danger to all citizens of the City of Fontana and could result in the further illegal use of force and violence by the defendants." *Complaint,* at ¶ 91. However, nowhere do they specify under what circumstances the City's policy authorizes police officers unjustifiably to employ deadly force against black persons, nor do they explain why they likely will find themselves in such circumstances. They do not even suggest that they are likely to be involved in the same type of family quarrel which led officers Smith and Mejia to approach and restrain their father. We therefore cannot find in their allegations a sufficiently credible threat of future injury to establish an Article III "case or controversy" under the guidelines established by the Supreme Court.

We have previously held that *Lyons* and its progeny do not preclude the exercise of federal jurisdiction when a plaintiff brings both a claim for damages and a related claim for equitable relief in the same lawsuit. In *Giles v. Ackerman,* 746 F.2d 614 (9th Cir.1984), a woman who was subjected to a strip search after being arrested for failure to pay several outstanding parking tickets brought a section 1983 claim against several county defendants based on their alleged violation of her fourth amendment rights. She sought damages for her actual privacy invasion, a declaratory judg-

ment that the county's policy of strip searching was unconstitutional, and injunctive relief against the policy's continued enforcement. In response to the suggestion that she could not credibly assert that she again would be subjected to a strip search and that therefore she had no standing to seek declaratory or injunctive relief, we reasoned as follows:

> In *Lyons* the plaintiff's damages claim had been severed from his claim for injunctive relief. The [Supreme] Court was thus required to consider whether his request for an injunction, standing alone, presented a case or controversy. In contrast, it is clear that Giles has standing to bring her damages action, and there is no question that a live controversy exists between her and the County. The only question in her case is whether relief in addition to damages is appropriate.

746 F.2d at 619 (citations omitted).

We have concluded here that the children can maintain an action for damages against the City defendants based on their alleged violation of the children's substantive due process rights. *Ante,* at 1418–1419. However, we do not believe that our reasoning in *Giles* leads to the conclusion that this due process claim for damages allows us to exercise federal jurisdiction over the children's equal protection claim for equitable relief. In *Giles,* the plaintiff's claims for damages and equitable relief were predicated on a single legal theory requiring development of the exact same set of facts— that her strip search after arrest for a minor crime violated her Fourth Amendment rights. Giles had to establish all of the facts necessary to support her claim for equitable relief in order to win her damages claim, and therefore she "demonstrate[d] a 'personal stake in the outcome'" of her claim for equitable relief sufficient to "'assure that concrete adverseness' necessary for the proper resolution of constitutional questions." *Lyons,* 461 U.S. at 101, 103 S.Ct. at 1665 (citations omitted).

In contrast, for the children to win their claim for equitable relief based on the

City's alleged violation of the equal protection clause, the children would have to prove facts *additional* to those sufficient to win their due process claim for damages. The children can establish the City's liability for damages by showing that the City's official policy authorizes the use of excessive force and that this policy was causally related to their father's death at the hands of officers Smith and Mejia. To win their claim for equitable relief, however, the children would have to prove that the City's policy concerning the use of force discriminates against black citizens. Unlike in *Giles*, therefore, the plaintiffs' damages claim does not by itself guarantee the requisite adverseness with respect to the equal protection claim to satisfy the requirement of a "live controversy." *Giles*, 746 F.2d at 619. Interpreting *Giles* in light of *Lyons*, we believe that we must limit the exception established in *Giles*—that plaintiffs need not allege a credible threat of future injury in order to maintain a claim for equitable relief as long as they also have a claim for damages—to situations where the two claims involve the same operative facts and legal theory. The children here therefore cannot use their due process claim for damages to satisfy the independent "case or controversy" requirement governing their claims for equitable relief.

Although the allegations presently contained in the complaint fail to establish a "case or controversy" permitting the exercise of federal jurisdiction over the children's equal protection claims for equitable relief, it is not clear from the record that the children could not plead facts showing a credible threat of future injury at the hands of officers Smith and Mejia or other Fontana police officers. Because the complaint was filed before *Lyons* was decided, and because the district court never reached this question, we believe that the interests of justice require granting the plaintiffs leave to amend their complaint on remand. *Cf. Kelson*, 767 F.2d at 656 (plaintiffs afforded opportunity to amend complaint on remand to allege existence of official policy or custom when Supreme Court decided case refining definition of official policy after plaintiffs filed original deficient complaint); *Hirst v. Gertzen*, 676 F.2d 1252, 1264–65 (9th Cir.1982) (plaintiff afforded opportunity to amend complaint on remand to allege section 1983 claim against municipal defendants when Supreme Court decided case creating municipal liability after municipal defendants had been dismissed from the action).[18]

# VI

## REMAINING CONSTITUTIONAL CLAIMS

▮▮▮▮▮ The plaintiffs also alleged violations of their First, Fifth, and Eighth Amendment rights. Because these rights are all substantive in nature, *Parratt*'s focus on post-deprivation remedies is inapposite. However, these claims were all properly dismissed because the plaintiffs fail to state a claim for relief with respect to these rights. Except insofar as the First

---

18. If on remand the district court permits the plaintiffs to amend their complaint to plead a claim for *damages* under the equal protection clause based on the shooting of their father, and if that claim can survive a motion to dismiss for failure to state a claim according to applicable equal protection law, a question we do not reach here, *see supra* note 15, then *Giles* would control and the court could exercise jurisdiction over the children's equal protection claim for equitable relief.

Judge Alarcon's concern that the preceding discussion "appears to offer advice to the plaintiffs to assist them upon remand in curing the deficiencies in their pleading," *post*, at 1424, is misplaced. Our discussion of Supreme Court and Ninth Circuit case law concerning the pleading requirements for establishing federal court jurisdiction over claims for equitable relief is intended and indeed is necessary to explain what constitutes adequate allegations as a matter of law in order to justify our conclusion that the children's allegations in this particular case are legally deficient.

Amendment right to intimate association is relevant to the children's ability to assert a substantive due process claim, *ante* at 801, the complaint alleges no action of the officers or the city defendants that could conceivably implicate First Amendment concerns. The plaintiffs do not allege that the officers' action or the City's policy was designed to or had the effect of interfering with the decedent's or the children's ability to exercise their rights of free speech or association. Because the Fifth Amendment claim must rest either on that Amendment's due process clause or its implicit equal protection clause, any Fifth Amendment claim is merely duplicative of the Fourteenth Amendment claims. The Eighth Amendment protects only those who have been convicted of a crime, *see Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979), and therefore none of the plaintiffs can claim its protection here.[19]

## VII

### CONCLUSION

We hold that Mr. Smith's estate has properly stated a section 1983 claim for damages against all defendants for violations of his Fourth Amendment rights, against all defendants for violations of his Fourteenth Amendment substantive due process rights, and against all defendants for violations of his Fourteenth Amendment equal protection rights. We also hold that Mr. Smith's children have stated a section 1983 claim for damages against all defendants for violations of their substantive due process rights and a cause of action for injunctive relief but not damages against all defendants for violations of their Fourteenth Amendment equal protection rights. The district court's dismissal of the plaintiffs' action is therefore reversed.

REVERSED AND REMANDED.

19. The district court did not treat separately the plaintiffs' claim that the defendants violated 42 U.S.C. § 1981 by denying them "the full and equal benefit of all laws and proceedings for the security of persons ... as is enjoyed by white citizens...." Because *Parratt* places limitations

ALARCON, Circuit Judge, concurring and dissenting:

I concur in the judgment, and in Parts I, II, III, IV, VI, VII, and VIII. I dissent from that portion of Part V which appears to offer advice to the plaintiffs to assist them upon remand in curing the deficiencies in their pleading. These suggestions are unnecessary to the opinion. They will also present clearly avoidable problems for the district court, and this court, in the event of a further appeal, in distinguishing the law of this case from gratuitous obiter dictum.

only on procedural due process actions under section 1983, *Parratt* does not justify dismissal of the section 1981 claim. Because the issue was not briefed on appeal, we do not address the question whether the plaintiffs state a cause of action under section 1981.