John WARD, individually and as Administrator of the Estate of Anton Ward; Helen Ward; Helen Ward Tucker; Betty Ward Fisher; Jean Ward Thompson; Lillie Ward Manns, Plaintiffs–Appellees,

v.

CITY OF SAN JOSE, a municipal corporation; Joseph D. McNamara, individually and as Chief of San Jose Police Department, Defendants,

and

Richard Vasquez, individually and as police officer of the City of San Jose; James Rodrigues, individually and as police officer of the City of San Jose; Humberto Renteria, individually and as volunteer reserve police officer of the City of San Jose, Defendants–Appellants.

John WARD, individually and as Administrator of the Estate of Anton Ward; Helen Ward; Helen Ward Tucker; Betty Ward Fisher; Jean Ward Thompson; Lillie Ward Manns; Sabrina Ward, minor, Plaintiffs–Appellants,

v.

CITY OF SAN JOSE, a municipal corporation; Joseph D. McNamara, individually and as Chief of San Jose Police Department; Richard Vasquez, individually and as police officer of the City of San Jose; Humberto Renteria, individually and as volunteer reserve police officer of the City of San Jose, Defendants–Appellees.

John WARD, individually and as Administrator of the Estate of Anton Ward, Plaintiff,

and

Delissa WARD, guardian ad litem of minor Sabrina Ward; Sabrina Ward, minor, Plaintiffs–Appellants,

v.

CITY OF SAN JOSE, a municipal corporation; Richard Vasquez, individually and as police officer of the City of San Jose; James Rodrigues, individually and as police officer of the City of San Jose; Humberto Renteria, individually and as volunteer reserve police officer of the City of San Jose, Defendants–Appellees.

John WARD, individually and as Administrator of the Estate of Anton Ward; Helen Ward; Helen Ward Tucker; Betty Ward Fisher; Jean Ward Thompson; Lillie Ward Manns, Plaintiffs–Appellees,

v.

CITY OF SAN JOSE, a municipal corporation, Defendant,

and

Richard Vasquez, individually and as police officer of the City of San Jose; James Rodrigues, individually and as police officer of the City of San Jose; Humberto Renteria, individually and as volunteer reserve police officer of the City of San Jose, Defendants–Appellants.

John WARD, individually and as Administrator of the Estate of Anton Ward; Helen Ward; Helen Ward Tucker; Betty Ward Fisher; Jean Ward Thompson; Lillie Ward Manns, Plaintiffs–Appellees,

v.

CITY OF SAN JOSE, a municipal corporation; Joseph D. McNamara, individually and as Chief of San Jose Police Department; Richard Vasquez, individually and as police officer of the City of San Jose; James Rodrigues, individually and as police officer of the City of San Jose; Humberto Renteria, individually and as volunteer reserve police officer of the City of San Jose, Defendants–Appellants.

Nos. 90–15077, 90–15121, 90–15166, 90–15846 and 90–15848.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1991.

Decided Nov. 4, 1991.

As Amended on Denial of Rehearing and Rehearing En Banc June 16, 1992.

Ralph C. Greene, Chief Trial Atty. and David K. Huskey, Sr. Deputy City Atty., Office of the City Attorney, San Jose, Cal., for defendants-appellants-cross-appellees.

William B. Chapman, Mark A. White, and David Nied, of Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., M. Jean Starcevich, San Jose, Cal., for plaintiffs-appellees-cross-appellants.

Before WALLACE, Chief Judge, GOODWIN and FLETCHER, Circuit Judges.

### ORDER

The opinion filed in the above case on November 4, 1991, is amended as follows: [Editor's Note: These amendments have been incorporated in the published opinion.]

With the above amendments, the panel as constituted above has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R.App.P. 35(b).

The petition for rehearing is denied, and the suggestion for rehearing en banc is rejected.

### OPINION

WALLACE, Chief Judge:

After three San Jose police officers shot and killed Ward, his estate and family brought this civil suit against the City of San Jose, its police chief, McNamara, and the officers involved. The suit included both federal and state-law claims. The federal claim was brought pursuant to 42 U.S.C. § 1983 for the excessive use of force and a violation of substantive due process. The state-law claim was brought for wrongful death.

The case was tried to a jury, which found liability on the federal claim only. After the district court ruled on the numerous post-trial motions, *Ward v. City of San Jose*, 737 F.Supp. 1502 (N.D.Cal.1990), all parties appealed. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand for a new trial on the excessive force and wrongful death claims.

### I

Ward and others were spending the evening at his home. He drank liquor and ingested cocaine. As Ward walked one of his guests to her car, both Ward and his guest saw three police officers in an adjacent yard. Though the police wore uniforms, it appears that Ward did not recognize them. After Ward's guest departed, Ward decided to "check it out." He followed the police into his neighbor's yard, and they told him to get away. Ward then returned to his house with the remark, "Two white boys told [me] to get the hell in the house."

The police officers were attempting to execute a drug raid on an apartment com-

plex behind Ward's house. The complex was known to the officers as the site of numerous prior drug offenses, and they had previously targeted it in their anti-narcotics efforts. The officers planned to stake out positions behind the complex, wait for suspicious activity, and then send word by police radio to a fourth officer, who would approach the front of the complex in a marked car, flushing the suspects toward the waiting officers.

The police approached the apartment complex through a yard which adjoined the apartment complex and belonged to one of Ward's immediate neighbors. They had previously obtained the owner's permission to cross this property and reconfirmed this permission before entering it this evening. It was at this point, as already observed, that the police briefly encountered Ward, who then returned to his house.

The police made their way through the neighbor's side yard and began climbing over a back fence near a second fence that formed the back border of the apartment complex. They then heard voices from Ward's backyard. Ward had emerged with a shotgun and flashlight. He seems to have become concerned by the possibility of intruders.

The parties dispute the events of the moments that followed. The officers say they identified themselves and commanded Ward to put the weapon down. They say that Ward then leveled the weapon at one of the officers and in response, they fired. Those testifying for Ward say that his first contact with the police came not in the form of self-identification, but rather an extremely bright flashlight. They say the police shouted for Ward to freeze, and when he turned slightly instead, they immediately opened fire. Ward died from the shooting a short time thereafter.

## II

■ Eight members of the Ward family have asserted an interest in this litigation. The district court dismissed some and permitted others to proceed. Three of the district court's rulings are unchallenged on appeal. Remaining are the interests of de-cedent's parents and siblings. The district court's determination of the proper plaintiffs is a ruling of law subject to de novo review. *Smith v. City of Fontana*, 818 F.2d 1411, 1415 (9th Cir.) (*Smith*), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987).

■ The parents are proper plaintiffs, as concluded by the district court. In *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.1985), we held that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." The officers concede the point as a matter of Ninth Circuit law, but urge us instead to follow *Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st Cir.1986), which rejects a parental liberty interest. This we cannot do. *See United States v. Salas*, 879 F.2d 530, 537 (9th Cir.) ("A three-judge panel of this court cannot disregard or overrule a prior decision of this court."), cert. denied, 493 U.S. 979, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989).

■ The district court dismissed decedent's siblings. Whether they possess a cognizable liberty interest in their brother's companionship is a question of first impression in this circuit, but our decision in *Smith*, 818 F.2d at 1411, provides a useful framework. After Smith was killed by Fontana police officers, his spouse and adult children brought a section 1983 action. We held that Smith's spouse could sue as administratrix of his estate, and his children could sue to vindicate a personal liberty interest in their father's companionship. *Id.* at 1416–17, 1420. We reasoned that "the familial relationship, and not the more narrow custodial interest of the parents, gave rise to the due process action." *Id.* at 1419. The interests of other family members were not before us in *Smith*, and we expressly declined to consider them. *Id.* at 1419 n. 11.

The interests of both parents and siblings were considered, however, by *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984), a case upon which *Smith* relies. Bell was shot and killed by Milwaukee police officers, resulting in a section 1983 action. The court concluded that siblings had not been given a place similar to par-

ents in the constitutional or statutory scheme. *Id.* at 1245–48. It therefore rejected a separately cognizable liberty interest for Bell's siblings. *Id.* at 1248.

The only other circuit to consider the issue is the Tenth, in *Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985). Trujillo died while incarcerated in jail. *Id.* at 1187. His mother and sister brought a section 1983 claim, which was dismissed. *Id.* The court recognized a liberty interest in both parents and siblings, but required all family members to prove a wrongful intent directed specifically at them. *Id.* at 1189–90.

We adopt the earlier and better rule of *Bell.* Neither the legislative history nor Supreme Court precedent supports an interest for siblings consonant with that recognized for parents and children. Moreover, *Bell* is consistent with our decision in *Smith* while *Trujillo* is not. *Trujillo* approved a potentially larger group of plaintiffs, but limited that group by requiring them to prove a wrongful intent directed specifically at them. Neither *Bell* nor *Smith* imposed any such limitation, and we are unwilling to do so here. *See Smith,* 818 F.2d at 1420 n. 12. Therefore, in reliance on *Smith* and *Bell,* we affirm the district court's order dismissing the Ward siblings.

### III

Plaintiffs went to trial on two theories of section 1983 liability. First, they contended the officers used excessive force in violation of the fourth amendment. Second, they alleged the officers violated Ward's fourteenth amendment right to substantive due process by endangering him prior to the shooting. The district court gave both theories to the jury, and on a verdict form that did not distinguish between them, the jury found section 1983 liability.

### A.

 The officers contend that the substantive due process claim cannot be brought in this excessive force case after *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (*Graham*). This contention presents a question of law subject to de novo review. *See United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Graham was a diabetic whose behavior prior to a diabetic coma attracted the attention of the Charlotte, North Carolina police. The police stopped and detained Graham, severely injuring him in the process. Graham brought a section 1983 claim. The district court granted the police officers' motion for a directed verdict, applying the substantive due process analysis of *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The Supreme Court rejected this approach.

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham,* 490 U.S. at 395, 109 S.Ct. at 1871 (emphasis in original). "It is clear that under *Graham,* excessive force claims arising before or during arrest are to be analyzed *exclusively* under the fourth amendment's reasonableness standard rather than the substantive due process standard...." *Reed v. Hoy,* 909 F.2d 324, 329 (9th Cir.1989) (*Reed*) (emphasis added), *cert. denied,* ── U.S. ──, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991); *see also Hammer v. Gross,* 932 F.2d 842, 845 (9th Cir.1991) (en banc).

Ward attempts to distinguish *Graham* and *Reed* on the basis of *Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* ── U.S. ──, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990). The car in which Wood was a passenger was impounded as a consequence of the driver's arrest for intoxi-

cation. The police left Wood alone at night in a high crime area, and she was subsequently raped. We held that Wood had stated a claim for relief under section 1983 and the substantive due process clause. *Id.* at 587–90.

Ward's reliance on *Wood* is misplaced in the present context, because Wood was not arrested, stopped, or seized. *See id.* at 586. Ward was seized when shot. *Reed,* 909 F.2d at 329 ("We hold that the 'seizure' requirement was satisfied by Hoy's shooting of Reed."); *see also Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10 ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968))). This seizure exclusively implicates the fourth amendment, as *Graham* and *Reed* clearly hold. *Graham,* 490 U.S. at 395, 109 S.Ct. at 1871; *id.* at 399–400, 109 S.Ct. at 1873–1874 (Blackmun, J., concurring in part and concurring in the judgment); *Reed,* 909 F.2d at 329.

It is reversible error to give a substantive due process instruction in an excessive force case after *Graham. Eberle v. City of Anaheim,* 901 F.2d 814, 820 (9th Cir.1990); *Reed,* 909 F.2d at 329–30. Because the district court gave the substantive due process claim to the jury, we reverse.

### B.

As we have already observed, the jury found section 1983 liability without distinguishing between the fourth and fourteenth amendment theories, so ordinarily we would be required to reverse the verdict and order a new trial. However, the officers contend that under the unique circumstances of this case, a new trial is unnecessary.

They argue that a remand for trial on the fourth amendment claim can be avoided by reliance on the jury's state law wrongful death verdict. The answers to special interrogatories indicate that the jury found

that any negligence of the officers was not the proximate cause of the wrongful death. In addition, in answer to another interrogatory, the jury found that Ward was not shot "intentionally and unjustifiably." The officers point out that the shooting was the basis of the fourth amendment claim, and contend that the answers to the interrogatories demonstrate that the jury found their conduct "objectively reasonable" as required by the fourth amendment. *See Graham,* 490 U.S. at 397, 109 S.Ct. at 1872.

This argument is not without force. The problem is the apparent confusion with the finding of section 1983 liability. On that claim, we cannot tell whether liability was assessed on the basis of the fourth or fourteenth amendments. Nor are the jury's findings on the wrongful death claim necessarily dispositive of the fourth amendment issue. Because the instructions contain no definition of the key terms, such as "unjustifiable," we cannot tell whether the state law acquittal implies that the jury found the conduct "reasonable" as required by the fourth amendment. In short, given the improper instructions, and the ambiguity of the special verdict, we cannot determine what the jury actually found on the fourth amendment claim.

Ordinarily, we would not be disposed to retrieve the plaintiffs' claim had they caused the confusion. But here, a review of the record suggests that the district court, and not plaintiffs, is primarily responsible for this ambiguity. Plaintiffs initially proposed a verdict form that distinguished between the fourth and fourteenth amendment theories. The district court rejected this form, however, and only in response did plaintiffs propose the form of verdict eventually given to the jury, which required only one finding with regard to both theories. Plaintiffs ought not to be prejudiced by the district court's ruling, as they would be, if we were to interpret the ambiguous verdict against them.

### IV

Our decision to reverse the fourteenth amendment claim and remand the fourth amendment claim precludes the need for us to consider many of the parties' contentions

of error: the officers' numerous challenges to the jury instructions on substantive due process, or their claim of qualified immunity against that theory and the parties' various challenges to the district court's evidentiary rulings. Three contentions remain.

## A.

■ Punitive damages are proper under section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Kennedy v. Los Angeles Police Department*, 901 F.2d 702, 707 (9th Cir.1989) (*Kennedy*). "The decision to impose such sanctions is within the exclusive province of the jury." *Kennedy*, 901 F.2d at 707. However, defendants are entitled to a directed verdict if the evidence and its inferences, considered as a whole and viewed in the light most favorable to plaintiffs, can reasonably support a defense verdict only. *The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1151 (9th Cir.1988).

■ Here, the district court held the evidence could not support a finding that the officers acted "maliciously, wantonly, or oppressively." It therefore granted the officers a directed verdict on punitive damages. We review this decision de novo. *See id.*

Before Ward appeared on his back porch with a shotgun and flashlight, the officers' conduct was not directed toward him in any way; the officers were moving through an adjacent backyard on their way to yet another. Whether the officers responded reasonably in the moments that followed will be determined, as we have held, by a jury on remand. There is absolutely no evidence, however, that the officers acted with evil intent. A directed verdict on punitive damages was therefore appropriate, and we affirm the district court's decision to grant it.

## B.

■ On the state-law wrongful death claim, the jury found that the officers were negligent but their negligence was not the proximate cause of Ward's death. After this verdict was announced, Sabrina Ward moved for judgment NOV, and in the alternative, for a new trial and leave to amend. The district court denied these motions.

Turning first to the motion for judgment NOV, we must determine whether the evidence and its inferences, considered as a whole and viewed in the light most favorable to the non-moving party, can support only one reasonable conclusion. *Id.* Because the district court applies this same standard, our review is de novo. *See id.* The jury's finding that proximate cause was absent is not inconsistent with the evidence. A significant intervening force, the actions of Ward himself, could be considered by a rational jury in determining proximate cause. There was no error.

The district court also denied Sabrina Ward's motion for a new trial. This ruling is normally reviewed for an abuse of discretion, but when the motion is based on an alleged inconsistency in the jury verdict, the question is whether the verdict can be reconciled on any reasonable theory consistent with the evidence. *Ortiz v. Bank of America National Trust & Savings Association*, 852 F.2d 383, 388 (9th Cir.1987).

■ The verdict form required the jury to find proximate cause before it could impose wrongful death liability. It did not, however, impose a similar requirement with regard to section 1983. The jury's determination of section 1983 liability would not have been inconsistent with the wrongful death verdict if the verdict was based on the fourteenth amendment theory. We have concluded, however, that the fourteenth amendment claim was improperly submitted to the jury and that the jury may only base liability on the fourth amendment. Assuming liability predicated on a violation of Ward's fourth amendment rights, we conclude that the jury's wrongful death verdict is inconsistent with a verdict of section 1983 liability. If the jury had found the officers' actions at the time of the shooting not to be "objectively reasonable," it necessarily would have found

proximate causation, since there is no dispute that the intentional act of Officer Vasquez resulted in Ward's death. In addition, it appears that the jury could not have consistently found the officers' actions to be negligent, but at the same time determine that they were not a proximate cause of the harm. Therefore, we reverse and remand for retrial of the wrongful death claim.

Finally, we consider Sabrina Ward's post-trial motion for leave to amend. Sabrina Ward sought leave to add a claim under section 1983. The district court denied this motion, a decision we review for abuse of discretion. *See SEC v. Rogers*, 790 F.2d 1450, 1455 (9th Cir.1986).

We need not consider whether Sabrina Ward might have been allowed, if she had timely raised the possibility, to bring a section 1983 claim. We simply observe that her motion to amend came very late in the day, so the district court's denial was not an abuse of discretion and must therefore be affirmed on appeal.

### C.

Our holding that retrial is necessary on the fourth amendment and wrongful death claims requires us to vacate the judgment NOV entered by the district court in favor of McNamara and the City. The district court dismissed these defendants after ruling that the jury verdict was consistent only if interpreted as imposing liability solely upon the fourteenth amendment. *Ward v. City of San Jose*, 737 F.Supp. at 1506. We cannot foreclose the possibility that the jury found liability under the fourth amendment or the state wrongful death statute. Therefore, we vacate the judgment NOV to the extent that it dismisses these claims against the City and McNamara.

Our ruling eliminates the need to reach the final issue in this appeal involving a motion by the City and McNamara for costs pursuant to Fed.R.Civ.P. 54(d). They are not yet prevailing parties in this litigation.

Thus, we remand for a new trial on the claims of excessive force and wrongful death.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.