# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 16-1760

_____

Justin Guenther, Special Administrator, Estate of Semmie John Guenther

*Plaintiff - Appellant*

v.

Griffin Construction Company, Inc.

*Defendant - Appellee*

------------------------------

Equal Employment Opportunity Commission

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: September 21, 2016
Filed: January 19, 2017

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

RILEY, Chief Judge.

This appeal asks whether a claim for compensatory damages brought under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101, et seq., survives or abates upon the death of the aggrieved party. Semmie John Guenther, Jr., filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), alleging his former employer, Griffin Construction Company, Inc., discriminated against him on the basis of his disability. Guenther passed away while his charge was still pending, so the special administrator of his estate filed suit on his behalf when he received the EEOC right-to-sue letter. The district court dismissed the action, concluding federal common law called for application of the Arkansas survival statute, see Ark. Code Ann. § 16-62-101(a)(1), and finding Guenther's claim had abated. Guenther's estate appeals, and having jurisdiction under 28 U.S.C. § 1291, we reverse.

## I.    BACKGROUND

Guenther began working for Griffin Construction in 2008, and he oversaw construction projects across Arkansas and Texas for four years. In the spring of 2012, he was diagnosed with prostate cancer. Guenther requested and received roughly three weeks' leave from work to receive treatment, and he returned to work when it appeared the treatment was successful. In 2013, Guenther learned the cancer had spread throughout his body. He notified Griffin Construction he would need to take another three weeks' leave to undergo radiation therapy. Instead, Griffin Construction fired Guenther and told him he could reapply for any openings in the future if he wished. Despite alleged promises to the contrary, Griffin Construction also immediately cancelled Guenther's insurance policies.

Guenther filed a timely charge of discrimination with the EEOC. He died before the administrative process was complete. In May of 2015—roughly 22 months after Guenther was fired, 20 months after he filed his charge, and 12 months after he passed away—the EEOC issued its right-to-sue letter, having found reasonable cause. Justin Guenther, special administrator of Guenther's estate, filed suit under Title I of

-2-

the ADA, 42 U.S.C. §§ 12111, et seq., and the Arkansas Civil Rights Act, Ark. Code Ann. §§ 16-123-101, et seq. Griffin Construction filed its answer and then moved to dismiss the action, contending the claims did not survive Guenther's death. The district court adopted the Arkansas tort survival statute as the federal rule of decision, agreed that Guenther's ADA claim abated at his death, and entered judgment for Griffin Construction on the pleadings.[1] See Fed. R. Civ. P. 12(c). We reverse.

## II.    DISCUSSION

Whether a complaint states a cause of action is a question of law we review on appeal de novo. See Minch Family LLLP v. Buffalo-Red River Watershed Dist., 628 F.3d 960, 965 (8th Cir. 2010). We assume all well-pleaded factual allegations are true, draw all reasonable inferences in favor of the non-movant, and affirm dismissal under Rule 12(c) only if the movant is entitled to judgment as a matter of law. See id. Under normal circumstances the facts as alleged here would state a plausible claim under the ADA. However, Guenther, the would-be plaintiff, died before he could file suit. The determinative issue at this stage becomes whether the ADA claim for compensatory damages survived Guenther's death.[2]

Whether a federal claim survives is a question of federal law. See Carlson v. Green, 446 U.S. 14, 23 (1980). Congress could have supplied the answer by explicitly instructing courts on how to resolve situations like this one. It did not. The ADA is silent on the claim-survival issue, and "[t]here is no general survival statute

---

[1]The district court declined to exercise its supplemental jurisdiction over the state law claim without deciding whether it had abated as well. See 28 U.S.C. § 1367(c)(3).

[2]The district court grouped the alleged damages sought into three categories: "(i) loss of employment compensation; (ii) loss of reputation and self-esteem; and (iii) mental anguish and emotional distress." The estate makes no claim on appeal for punitive damages under the ADA and conceded in the district court the non-recovery of punitive damages.

for federal-question cases." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1954. Nor does 42 U.S.C. § 1988(a)—which directs courts to fill gaps in certain federal actions with state law when state law is not "inconsistent" with federal law—apply to the ADA.[3] Therefore the question of survival "is governed by federal common law when, as here, there is no expression of contrary intent" from Congress. Smith v. Dep't of Human Servs., 876 F.2d 832, 834 (10th Cir. 1989).

"The more difficult task, to which we turn, is giving *content* to this federal rule." United States v. Kimbell Foods, Inc., 440 U.S. 715, 727 (1979) (emphasis added). Sometimes it is best to incorporate state law, while other times a uniform rule is warranted. Compare Gaona v. Town & Country Credit, 324 F.3d 1050, 1056 (8th Cir. 2003) (applying a state statute of limitations to the ADA), with Clackamas Gastroenterology Assocs., P. C. v. Wells, 538 U.S. 440, 448-50 (2003) (creating a uniform definition of "employee" for the ADA). Whether to adopt state law or create a uniform federal rule "is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" Kimbell Foods, Inc., 440 U.S. at 728 (quoting United States v. Standard Oil Co. of Cal., 332 U.S. 301, 310 (1947)). Contrary to the district court's opinion, we are convinced the relevant considerations weigh in favor of a uniform rule of survivability.

_____

[3]A number of courts have nonetheless looked to § 1988(a) to address the survivability of ADA claims. See Kettner v. Compass Grp. USA, Inc., 570 F. Supp. 2d 1121, 1131 (D. Minn. 2008) (collecting cases). But the district court correctly "reject[ed] the notion that § 1988(a) applies to the ADA" given § 1988(a)'s expressly limited application to actions brought under "titles 13, 24, and 70 of the Revised Statutes." See 42 U.S.C. § 1988(a). None of these enumerated provisions include the ADA, and Griffin Construction does not propose the provision should apply on appeal, so we will not belabor the issue. See, e.g., Kettner, 570 F. Supp. 2d at 1126-32 (providing well-reasoned analysis as to why § 1988(a) does not apply to modern employment-discrimination schemes like the ADA).

First, state law should not be incorporated where doing so would "'frustrate specific objectives of the federal programs.'"[4] Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 98 (1991) (quoting Kimbell Foods, Inc., 440 U.S. at 728). "[F]ederal courts must be ever vigilant to insure that application of state law poses 'no significant threat to any identifiable federal policy or interest.'" Burks v. Lasker, 441 U.S. 471, 479 (1979) (quoting Wallis v. Pan Am. Petroleum Corp., 384 U.S. 63, 68 (1966)).

So what did Congress say? Congress declared its interest in passing the ADA was to "provide a clear and comprehensive national mandate" with "clear, *strong*, *consistent*, [and] *enforceable* standards" to address the "serious and pervasive social problem" of disability-based discrimination on a case-by-case basis. 42 U.S.C. § 12101(a)(2), (b)(1)-(2) (emphasis added); see Clackamas, 538 U.S. at 446 & n.6 (considering broad application of the ADA's protections "consistent with the statutory purpose of ridding the Nation of discrimination").

Griffin Construction contends that allowing Guenther's claim to abate under Arkansas law does not frustrate this national mandate.[5] In making this contention it relies primarily on the Supreme Court's holding in Robertson v. Wegmann, 436 U.S. 584 (1978), and our decision in Parkerson v. Carrouth, 782 F.2d 1449 (8th Cir. 1986). These cases stand for the proposition that "'[a] state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose

---

[4]The district court found this consideration inapplicable given its belief "there is no federal 'program' at issue in this case." But the Supreme Court's decision in Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 108 (1991), relied upon by the district court, treated "program" and "legislation" as synonymous, and we believe the district court's analysis was too narrow in this regard.

[5]We assume without deciding that Guenther's claim would not survive under Arkansas' survival statute, though the parties dispute this point.

the litigation.'" Id. at 1453 (quoting Robertson, 436 U.S. at 593). But cf. Carlson, 446 U.S. at 25 ("A uniform rule that claims such as respondent's survive the decedent's death is essential if we are not to 'frustrate in [an] important way the achievement' of the goals of Bivens actions." (alteration in original) (quoting UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 702 (1966))).

We are not persuaded by this analogy. Robertson and Parkerson involved § 1983 actions as to which Congress had expressed its preference for state law via § 1988(a). See Parkerson, 782 F.2d at 1453 ("'[Section] 1988 quite clearly instructs us to refer to state statutes.'" (quoting Robertson, 436 U.S. at 593)); see also Carlson, 446 U.S. at 24 n.11 ("Section 1988 does not in terms apply to Bivens actions, and there are cogent reasons not to apply it to such actions even by analogy."). Congress has given no such indication in the ADA, and thus our analytical starting point is different.[6]

Furthermore, Robertson was a "narrow" holding "limited to situations" where allowing a claim to abate under state law would have "no independent adverse effect on the policies underlying § 1983," namely compensation and deterrence. Robertson, 436 U.S. at 594. The Supreme Court concluded the state statute in that case posed no threat to deterrence because most claims would survive under it and "even an official aware of the intricacies of [state] survivorship law would hardly be influenced in his behavior by its provisions."[7] Id. at 592. We broadened this rationale somewhat

_____

[6]The Court made this difference clear in Robertson: "[S]urvivorship rules in areas where the courts are free to develop federal common law—*without first referring to state law and finding an inconsistency*—can have no bearing on our decision here." Robertson, 436 U.S. at 594 n.11 (emphasis added); see also Kettner, 570 F. Supp. 2d at 1130.

[7]Robertson involved the Louisiana survival statute, which allowed § 1983 claims to abate only if the aggrieved party was not survived by a spouse, child, parent, or sibling. See Robertson, 436 U.S. at 591. The Court was confident few

-6-

in <u>Parkerson</u> because the state statute was less hospitable than was the case in <u>Robertson</u>, although we emphasized our belief there was still no threat to deterrence because § 1983 wrongdoers "have no means of knowing their victim will die during the pendency of the victim's action." <u>Parkerson</u>, 782 F.2d at 1455.

We agree with Guenther's estate that abatement of compensatory ADA claims poses "a special threat to enforcement." This is because the very nature of the ADA makes it more likely the aggrieved party will die before the case is complete given the health issue which brings him or her under the statute's protection.[8] These are not "farfetched assumptions"—as was the case in <u>Robertson</u>, 436 U.S. at 592-93 n.10—because ADA claims specifically involve *disabled plaintiffs* alleging they were discriminated against *because of* their disability. Congress passed the ADA to eradicate discrimination against disabled persons, some of whom may be targeted precisely because of their poor health. A state law allowing claims to abate when the aggrieved party dies impedes this broad remedial purpose.

State law is also unsuited to fill a gap in federal law "when the scheme in question evidences a distinct need for nationwide legal standards." Kamen, 500 U.S. at 98. The district court found no such *distinct* need notwithstanding the fact "[t]here are, of course, certain uniformity interests implicit in all federal laws." To be sure,

---

deceased victims' claims would actually abate, which minimized any impact on § 1983's purposes. <u>See</u> <u>id.</u> at 591-92. That is not the case here. Under the district court's interpretation of the Arkansas statute, survival of ADA claims would be the rare exception rather than the general rule.

[8]This possibility is made more likely considering the path to trial for an ADA claim is often measured in years, not months. A plaintiff must first exhaust the administrative process. <u>See</u> 42 U.S.C. §§ 2000e-5(e)(1), 12117(a). Guenther's exhaustion process took almost two years. Adding to this concern is the possibility that defendants may prolong litigation with the potential that the claim will abate. We believe this would be contrary to the overall purpose of the ADA. <u>See</u> <u>id.</u> § 12101.

the interest in uniformity is particularly strong in cases where the rights, obligations, and liabilities of the United States or its officers are implicated. See, e.g., Carlson, 446 U.S. at 24 ("'The liability of federal agents for violations of constitutional rights should not depend upon where the violation occurred.'" (quoting Green v. Carlson, 581 F.2d 669, 675 (7th Cir. 1978), aff'd, 446 U.S. 14)); Clearfield Tr. Co. v. United States, 318 U.S. 363, 367 (1943) (establishing a uniform rule in a dispute over commercial paper—a check—issued by the federal government because "application of state law . . . would subject the rights and duties of the United States to exceptional uncertainty").

It cannot be said uniformity is irrelevant when filling interstices in federal anti-discrimination law. The ADA embodies Congress's attempt to create a "comprehensive national mandate" where "the Federal Government plays a central role" in enforcing "consistent" standards. 42 U.S.C. § 12101(b)(1), (3). The Supreme Court saw fit to create a uniform definition for "employee" status under the ADA in Clackamas, 538 U.S. at 448-51. Cf. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754-55 (1998) (concluding "a uniform and predictable standard must be established as a matter of federal law" to define "agency" for purposes of Title VII); Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 740 (1989) ("Establishment of a federal rule of agency, rather than reliance on state agency law, is particularly appropriate here given the [Copyright] Act's express objective of creating national, uniform copyright law."). Our court has also displaced state law in the name of uniformity. See United States v. Big D Enters., Inc., 184 F.3d 924, 932 (8th Cir. 1999) ("When a federal statute provides a remedy, the scope of the remedy is interpreted in accordance with federal law. . . . The application of state law to the assessment of punitive damages under the [Fair Housing Act] would yield inconsistent results between the states and thwart the evenhanded application of the FHA's anti-discrimination provisions.").

We agree with the district court that the ADA's federal character, taken alone, is not enough to prove the need for a uniform rule. To hold otherwise would mean state law should *never* serve as the rule of decision for federal actions. Griffin Construction, however, suggests applying state law here provides the uniformity of *process* this consideration is intended to effect. To accept mere uniformity of process—without giving any attention to uniformity of results—could make uniformity virtually irrelevant. We do not consider it trivial that Guenther's claim would have survived in many states. See, e.g., Iowa Code § 611.20. In settling somewhere between these two extremes, we find Congress's call for a "national mandate" with "consistent" standards and the desire to effect the "evenhanded application" of the ADA's anti-discrimination provisions both weigh in favor of a uniform federal rule.

Griffin Construction suggests incorporating state law would not frustrate the ADA's underlying policies or disrupt uniformity because, by analogy, we incorporate state statutes of limitation for ADA claims. See Gaona, 324 F.3d at 1056. This is comparing apples to oranges. Whatever surface appeal the analogy may have—both are procedural rules which may bar otherwise-valid claims—does not withstand closer scrutiny. Although statutes of limitations require action within a certain time, they will not entirely bar a diligent plaintiff. A survivorship statute, on the other hand, may be an absolute barrier to a plaintiff (and his or her estate) who does everything he or she can to assert his or her rights. In the timely filing situation there is an element of control by the plaintiff. In the survivorship case there is not.

In addition, the backdrop against which Congress remained silent is different for time limitations and survivorship. See generally Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 108 (1991) ("[W]here a common-law principle is well established . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply."). The general practice of supplying state limitations periods to federal laws has been followed for many years, see Hoosier

Cardinal Corp., 383 U.S. at 703-04, whereas federal courts have historically applied a well-established uniform rule to address survivorship, see Schreiber v. Sharpless, 110 U.S. 76, 80 (1884); Smith, 876 F.2d at 834-35. Guenther's estate is correct that "even the general rule regarding statutes of limitations may give way to federal policy." See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 161 (1983) ("[I]t may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.").

Lastly, we think the district court overemphasized the relevance of the state-law presumption detailed in Kamen to the issue here. Kamen was a shareholder derivative action where the Court addressed whether to displace state corporate law and create a universal-demand requirement for the Investment Company Act of 1940—that is, whether to create a uniform federal rule that would disallow shareholders from bypassing corporate directors and bringing a suit in the corporation's name even if first going to the directors would be futile. See Kamen, 500 U.S. at 95-97. The Supreme Court noted "[t]he presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards."[9] Id. at 98. The Court found corporation law to be such an area since it came within the purview of the state-law presumption previously established in Burks, given that corporations "'are creatures of state law . . . and it is state law which is the font of corporate directors' powers.'" Id. at 98-99 (omission in Kamen) (quoting Burks, 441 U.S. at 478). The Supreme Court deemed it improper to "'fashion an entire body of federal corporate law out of whole cloth'" because doing so would have "clearly upset the balance that [states] have struck between the power of the individual shareholder and the power of the directors." Id. at 99, 103 (quoting Burks, 441 U.S. at 480). With the ADA, it

[9]The Court cited commercial law, property law, and family law as examples of other areas traditionally "governed by state-law standards." Kamen, 500 U.S. at 98.

is federal law, not state law, that is the dominant font of anti-discrimination law. A uniform rule would not require fashioning an entire body of law out of whole cloth. And allowing claims to survive would not upset the employer-employee balance struck by state laws, because federal law, and many state laws, already prohibit discrimination.

For all of these reasons, we hold federal common law does not incorporate state law to determine whether an ADA claim for compensatory damages survives or abates upon the death of the aggrieved party. We join other courts that have allowed the individual's estate to bring and maintain a suit for compensatory damages under the ADA in place of the aggrieved party.[10] We intimate no view as to whether a claim for punitive damages would survive, particularly in light of the traditional federal common law rule that penal claims—as distinct from remedial claims—abate on death. See, e.g., Kettner, 570 F. Supp. 2d at 1133-34 (holding punitive damages abate). Nor do we opine whether a claim under any other federal scheme warrants a uniform rule of survivorship.

## III.  CONCLUSION

Guenther's ADA claim for compensatory damages survived his death. Griffin Construction is not entitled to judgment on the pleadings. The district court's decision is reversed, and because the estate's state claim was dismissed based on the district court's finding as to the federal claim, we remand both claims to the district court for further proceedings.

_____

---

[10]Before this case, every district court to address the issue within our circuit had reached this same conclusion. See generally A.H. v. St. Louis County, No. 4:14-CV-2069, 2015 WL 4426234, at *4 (E.D. Mo. July 17, 2015); Estate of Stoick ex rel. Spry v. McCorvey, No. 10-1030, 2011 WL 3419939, at *2-3 (D. Minn. July 29, 2011); Kettner, 570 F. Supp. 2d at 1134; Hanson v. Atl. Research Corp., No. 4:02CV00301, 2003 WL 430484, at *4 (E.D. Ark. Feb. 14, 2003).