**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LELAND WHEELER, Individually and as Successor in Interest of Deborah Colbert, *Plaintiff-Appellant*, <br><br> v. <br><br> CITY OF SANTA CLARA, a municipal corporation; ANDREW MCGUIRE; NICHOLAS BRONTE; ALAN WOLF; MICHAEL J. SELLERS; DOES, 2 through 50, *Defendants-Appellees.* | No. 16-17375 <br><br> D.C. No. 5:16-cv-01953-RMW <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, Senior District Judge, Presiding

Argued and Submitted April 11, 2018
San Francisco, California

Filed July 3, 2018

Before:  M. Margaret McKeown and Kim McLane
Wardlaw, Circuit Judges, and Gary S. Katzmann,* Judge.

Opinion by Judge Katzmann;
Concurrence by Judge Wardlaw

---

## SUMMARY**

---

### Civil Rights

The panel affirmed the district court's dismissal of a
complaint brought pursuant to 42 U.S.C. § 1983, the
Americans with Disabilities Act, and the Rehabilitation Act
by the biological son of Deborah Colbert, who was killed by
police officers during a response to a 911 call.

The district court dismissed the case, finding that
plaintiff had no legally cognizable interest in his relationship
with Colbert and that he was not a proper successor in
interest to her under California law because he had been
adopted by other parents as an infant.

The panel held that California's survival statute was
consistent with 42 U.S.C. § 1983, and thus applied to the
instant action.  The panel held that because plaintiff
indisputably did not meet the requirements for standing
under California law, he could not assert § 1983 claims on

---

* The Honorable Gary S. Katzmann, Judge for the United States
Court of International Trade, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

behalf of Colbert.  Further, although federal common law applied to the Americans with Disabilities Act and Rehabilitation Act claims, plaintiff was still not an appropriate plaintiff for a survival action based on those laws.  Plaintiff also could not bring a claim for loss of companionship with Colbert because they did not have the kind of parent-child relationship entitled to this type of constitutional protection.  Finally, because no proper plaintiff existed at the time of the district court's ruling, denying leave to amend the complaint was not an abuse of discretion.

Concurring, Judge Wardlaw stated that in holding that plaintiff did not have a protected interest for the Fourteenth Amendment loss of companionship claim, the panel concluded only that he was unable to demonstrate that he had a protected relationship with his biological mother.  Judge Wardlaw emphasized that this opinion does not hold that no adopted-out child could prove he had a protected interest in his relationship with his biological parent under the Fourteenth Amendment.

## COUNSEL

Sanjay S. Schmidt (argued), Law Office of Sanjay S. Schmidt, San Francisco, California; Joseph S. May, Law Office of Joseph S. May, San Francisco, California; for Plaintiff-Appellant.

Jon A. Heaberlin (argued) and Saman N. Khan, Rankin Stock Heaberlin, San Jose, California, for Defendants-Appellees.

**OPINION**

KATZMANN, Judge:

This appeal poses questions regarding the interaction of state statutes with various federal civil rights laws, the survival after death of claims brought under those federal laws, and the effect of adoption on Fourteenth Amendment loss of companionship claims. Deborah Colbert died after a confrontation with police. Her biological son, plaintiff Leland Wheeler, seeks to assert claims on her behalf under 42 U.S.C. § 1983 and the Fourth Amendment, the Americans with Disabilities Act ("ADA"),[1] and the Rehabilitation Act ("RA").[2]    Wheeler also brings a Fourteenth Amendment claim under § 1983 on his own behalf for loss of companionship resulting from her death. The district court dismissed the case, finding that Wheeler had no legally cognizable interest in his relationship with Colbert and that he was not a proper successor in interest to her under California law because he had been adopted by other parents as an infant. The district court also denied leave to amend the complaint. We affirm.

FACTUAL AND PROCEDURAL HISTORY

The complaint in this case alleges as follows: Deborah Colbert called 911 on April 13, 2014, and stated that she had taken pills, drank heavily, and would use a baseball bat to provoke the police to shoot her. Police officers were dispatched to her residence in response to her call. One of the officers had effectuated an involuntary mental health

---

[1] 42 U.S.C. § 12132.

[2] 29 U.S.C. § 794.

detention on Colbert eight days prior.  When another officer obtained a key to Colbert's apartment from a building manager and attempted to enter, Colbert emerged from her apartment holding a baseball bat.  The officers shot Colbert, and she died the following day from her resulting injuries.  Leland Wheeler is the biological son and only known living relative of Colbert.  He was adopted by other parents as an infant, but alleges that he maintained a "close relationship with Ms. Colbert during part of his childhood and throughout his adult life."

Wheeler filed this action in his individual capacity and on behalf of Colbert against the City of Santa Clara and several Santa Clara police officers ("Santa Clara").  The complaint also named as a plaintiff "John Doe 1," described as "the to-be-identified personal representative" of Colbert's estate.  Colbert's estate was not submitted to probate and no personal representative was appointed.  Wheeler asserted two § 1983 claims on his own behalf: a Fourteenth Amendment substantive due process claim for deprivation of his right to a familial relationship with his biological mother and a related *Monell* claim for supervisory liability.[3]  Wheeler also asserted a Fourth Amendment excessive force claim, a related *Monell* claim for supervisory liability, and claims under the ADA and RA[4] on behalf of Colbert.  Santa

---

[3] Under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978), plaintiffs can bring suit against municipalities "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Wheeler brings such a claim against Santa Clara here.

[4] Specifically, Wheeler asserts that Colbert's mental health conditions qualified her for ADA and RA protection; that officers knew

Clara moved to dismiss Wheeler's substantive due process claims and the claims asserted on Colbert's behalf. Wheeler requested leave to amend the complaint with the name of the Colbert estate's personal representative once one had been appointed.

Granting Santa Clara's motion, the district court dismissed all of the claims without leave to amend. The court found that, although California's survivorship law prevented Wheeler from bringing claims on behalf of Colbert, the statute was not inconsistent with § 1983. The court also held that federal common law would not permit him to bring the § 1983 and ADA and RA survivorship claims. The court further determined that Wheeler lacked a constitutionally protected interest in his relationship with Colbert because their legal relationship had been severed. Finally, the district court denied his request for leave to amend as futile. Wheeler timely appealed.

## STANDARDS OF REVIEW

This court reviews de novo standing issues, *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018), and orders granting a motion to dismiss for failure to state a claim, *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200, 1205 (9th Cir. 2016). A denial for leave to amend is reviewed for an abuse of discretion. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

---

of her disabilities but failed to reasonably accommodate them in the course of confronting her; and that this failure to accommodate her disabilities caused her death.

DISCUSSION

Wheeler argues that the district court erred in dismissing his case. He contends that (1) California's survivorship law undermines the deterrence and compensation goals of § 1983 because it would allow claims to abate when a civil rights violation caused the decedent's death; (2) federal common law of survivorship permits Wheeler to assert claims on behalf of Colbert; (3) the Fourteenth Amendment protects the companionship interests of all biological children and parents, regardless of the legal status of their relationship; and (4) the court abused its discretion by not allowing Wheeler to substitute an as yet nonexistent personal representative for Colbert's estate as plaintiff in this suit.

A. *California's Survival Statute Applies to Wheeler's § 1983 Claims.*

Wheeler asserts that state survivorship law can fill interstices where federal civil rights legislation does not provide a survivorship regime only so long as state law is not inconsistent with the purposes of the relevant federal civil rights law. He contends that because California's survivorship law allows claims to abate when a civil rights violation causes the decedent's death, its application would undermine the deterrence and compensation goals of § 1983.[5]  Therefore, he argues, the California survivorship

---

[5] 42 U.S.C. § 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

law is so inconsistent with § 1983 that recourse to federal common law is warranted.

"[T]he decision as to the applicable survivorship rule" in a § 1983 action "is governed by 42 U.S.C. § 1988." *Robertson v. Wegmann*, 436 U.S. 584, 588 (1978). Section 1988(a) provides that:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, *so far as the same is not inconsistent with the Constitution and laws of the United States*, shall be extended

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

> to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

(emphasis added).  In short, § 1988(a) "directs courts to fill gaps in certain federal actions with state law when state law is not 'inconsistent' with federal law." *Guenther v. Griffin Constr. Co., Inc.*, 846 F.3d 979, 982 (8th Cir. 2017).  When "resolving questions of inconsistency between state and federal law raised under § 1988," courts must consider whether the state law conflicts with the federal and constitutional provisions at issue and "whether application of state law would be inconsistent with the federal policy underlying the cause of action under consideration." *Robertson*, 436 U.S. at 590 (citations and internal quotation marks omitted).  "The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Id.* at 590–91.

Under California law, a cause of action is not lost by reason of a plaintiff's death.  Cal. Code Civ. Proc. ("C.C.P.") § 377.20.[6]  C.C.P. § 377.30 provides that a survival action

---

[6] In full:

> (a) Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period.

> (b) This section applies even though a loss or damage occurs simultaneously with or after the death of a person who would have been liable if the person's

can be maintained by the decedent's "personal representative" or "successor in interest." The "successor in interest" is defined as the beneficiary of the decedent's estate or "other successor in interest who succeeds to a cause of action." C.C.P. § 377.11. Adoption severs parent-child relationships for purposes of intestate succession, as here. Cal. Prob. Code § 6451.[7]

---

death had not preceded or occurred simultaneously with the loss or damage.

[7] This statute provides that:

(a) An adoption severs the relationship of parent and child between an adopted person and a natural parent of the adopted person unless both of the following requirements are satisfied:

(1) The natural parent and the adopted person lived together at any time as parent and child, or the natural parent was married to or cohabiting with the other natural parent at the time the person was conceived and died before the person's birth.

(2) The adoption was by the spouse of either of the natural parents or after the death of either of the natural parents.

(b) Neither a natural parent nor a relative of a natural parent, except for a wholeblood brother or sister of the adopted person or the issue of that brother or sister, inherits from or through the adopted person on the basis of a parent and child relationship between the adopted person and the natural parent that satisfies the requirements of paragraphs (1) and (2) of subdivision (a), unless the adoption is by the spouse or surviving spouse of that parent.

Both parties agreed that Wheeler was neither a personal representative nor a successor in interest of Colbert, and thus was barred from bringing claims on her behalf by California's survivorship statute. Wheeler claims, however, that state survivorship law should not apply when the alleged rights violation that is the subject of the suit caused the decedent's death, and cites *Robertson v. Wegmann*, 436 U.S. 584 (1978), for support. In *Robertson*, the Supreme Court applied Louisiana's survivorship law to a § 1983 action, which caused the action to abate. *Id.* at 590–95 ("Under the circumstances presented here, the fact that [plaintiff] was not survived by one of several close relatives should not itself be sufficient to cause the Louisiana survivorship provisions to be deemed 'inconsistent with the Constitution and laws of the United States.'" (quoting 42 U.S.C. § 1988)). Wheeler notes the Court explicitly "intimate[d] no view . . . about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights caused death," which was not the case in *Robertson*. *Id.* at 594.

Wheeler turns to *Carlson v. Green*, 446 U.S. 14 (1980), for further support. There, the Supreme Court declined to apply a state statute that would have barred survival of a *Bivens* claim for a death allegedly caused by federal officials. *Id.* at 23–25. The Court distinguished *Robertson* on the bases that: (1) the *Robertson* decedent did not die as a result of the alleged civil rights violation; and (2) § 1988 applied to the § 1983 action in *Robertson* but not to the *Bivens* claims at issue in *Carlson*. *Id.* at 24 & n.11. Additionally, in *Chaudry v. City of Los Angeles*, 751 F.3d 1096, 1103–05 (9th Cir. 2014), the Ninth Circuit held that

---

(c) For the purpose of this section, a prior adoptive parent and child relationship is treated as a natural parent and child relationship.

applying California law to prohibit the recovery of pain and suffering damages was contrary to § 1983's deterrence and compensation policies and thus did not apply California law. Wheeler cites several cases from other jurisdictions that applied similar reasoning where recovery was limited or no remedy was available to any survivors under state law.**[8]** In the same vein, he submits that, because the alleged constitutional violation caused the death of his biological mother, California's survival regime should not be applied because it would abate Colbert's Fourth Amendment and *Monell* claims, and thus undermine the deterrence and compensatory policies behind § 1983.

We are unpersuaded by Wheeler's arguments. As stated in *Robertson*, which we determine is controlling here:

> Despite the broad sweep of § 1983, we can find nothing in the statute or its underlying policies to indicate that a state law causing abatement of a particular action should invariably be ignored in favor of a rule of absolute survivorship. . . . That a federal remedy should be available . . . does not mean that a § 1983 plaintiff (or his representative) must be allowed to continue an action in disregard of the state law to which § 1988 refers us. *A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark,*

---

**[8]** *See Bass v. Wallenstein*, 769 F.2d 1173 (7th Cir. 1985); *McFadden v. Sanchez*, 710 F.2d 907 (2d Cir. 1983), *cert. denied*, 464 U.S. 961 (1983); *Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984).

> *there would be no reason at all to look to*
> *state law, for the appropriate rule would then*
> *always be the one favoring the plaintiff, and*
> *its source would be essentially irrelevant.*
> *But § 1988 quite clearly instructs us to refer*
> *to state statutes; it does not say that state law*
> *is to be accepted or rejected based solely on*
> *which side is advantaged thereby.*

*Robertson*, 436 U.S. at 590, 593 (emphasis added). Wheeler has proffered no subsequent authority or argument that overcomes this teaching of the Supreme Court. We note that we have previously applied state survivorship law to § 1983 actions where the decedent's death was caused by the alleged constitutional violation and allowed such claims to abate. *See, e.g.*, *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1229 (9th Cir. 2013) (holding that decedent's daughter failed to properly allege that she was her father's personal representative or successor in interest under California law); *Moreland v. Las Vegas Metropolitan Police Dept.*, 159 F.3d 365, 369–70 (9th Cir. 1998) (noting that in § 1983 actions, plaintiffs can assert Fourth Amendment claims on a decedent's behalf but have the burden of demonstrating that state law authorizes them to do so and holding that the district court did not err in dismissing the case for lack of standing under Nevada law).

Additionally, California's survivorship law is expansive – permitting either a personal representative or successor in interest to bring a claim on behalf of a decedent – and thus claims should rarely abate for lack of a proper plaintiff. *See Robertson*, 436 U.S. at 591–92 (holding that, because few people are not survived by one of the close relatives included in Louisiana's survivorship law and that the limitations included in the statute were reasonable, none of § 1983's

policies would be undermined if the plaintiff's action abated).  Indeed, Colbert's claims could have been asserted by a personal representative, had one been appointed properly during the statute of limitations period.  Therefore, California's survival statute is not inconsistent with § 1983 and applies to this action.

B.  *Wheeler Cannot Assert Colbert's ADA and RA Claims.*

Unlike § 1983, Congress did not provide a scheme for survivorship of ADA or RA claims after death.  Santa Clara contends that § 1988 should be applied and that the California survivorship law should govern those claims.  Wheeler argues that because the text of § 1988 appears to limit its application to specified civil rights laws – which do not include the ADA or RA – § 1988 does not apply and that, therefore, this court should use federal common law rather than state law.  Moreover, Wheeler contends that because "remedial" claims survive under federal law and Colbert's ADA and RA claims are remedial, Colbert's claims must survive as well.

It is a fundamental canon that where the "statutory text is plain and unambiguous," a court "must apply the statute according to its terms."  *Carcieri v. Salazar*, 555 U.S. 379, 387 (2009).  Further, the "doctrine of expressio unius est exclusio alterius 'as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions.'"  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) (quoting *Boudette v. Barnette*, 923 F.2d 754, 756–57 (9th Cir. 1991)).  According to the text of 42 U.S.C. § 1988(a) itself, the provision applies to "civil and criminal matters" brought under the "provisions of titles 13, 24, and 70 of the Revised Statutes," which do not include the ADA

and RA. 42 U.S.C. § 1988(a).**[9]** "If [the ADA or the RA] had been contained within one of these three Titles, it would fall within Section 1988(a). Of course, [they were] enacted almost a century after the Revised Statutes. [They were] never codified in its Titles 13, 24 or 70." *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 106 (3d Cir. 2017). Therefore, by its terms, § 1988(a) does not apply to the ADA and RA.

This conclusion is buttressed by the legislative history of § 1988. After Congress in 1874 amended § 1988 so that it was generally applicable to Title "Civil Rights" of the Revised Statutes – that is, the Reconstruction-era civil rights statutes which are now 42 U.S.C. §§ 1981, 1982 and 1983 – it never again amended 1988(a). *Revock*, 853 F.3d at 106–

---

**[9]** According to the References in Text for § 1988(a):

> Title 13 of the Revised Statutes, referred to in subsec. (a), was in the original "this Title" meaning title 13 of the Revised Statutes, consisting of R.S. §§ 530 to 1093. For complete classification of R.S. §§ 530 to 1093 to the Code, see Tables.

> Title 24 of the Revised Statutes, referred to in subsec. (a), was in the original "Title 'Civil Rights,' " meaning title 24 of the Revised Statutes, consisting of R.S. §§ 1977 to 1991, which are classified to sections 1981 to 1983, 1985 to 1987, and 1989 to 1994 of this title. For complete classification of R.S. §§ 1977 to 1991 to the Code, see Tables.

> Title 70 of the Revised Statutes, referred to in subsec. (a), was in the original "Title 'Crimes,' " meaning title 70 of the Revised Statutes, consisting of R.S. §§ 5323 to 5550. For complete classification of R.S. §§ 5323 to 5550, see Tables.

07.  "Congress' inaction with regard to Section 1988(a) stands in contrast to its frequent amendment of Section 1988(b)," which was amended as recently as 2000 to add the Religious Land Use and Institutionalized Persons Act of 2000 to the statutes enumerated in that subsection relating to attorney's fees.  *Id.* at 107; *see* 42 U.S.C. § 1988, Amendments.  In short, § 1988(a) explicitly and unambiguously includes only certain civil rights statutes and omits others, such as the ADA and RA.  We hold, as have other circuits[10] and some district courts[11] – including those within the Ninth Circuit[12] – that a plain reading of the statute

---

[10] *See, e.g.*, *Guenther v. Griffin Constr. Co., Inc.*, 846 F.3d 979, 982 (8th Cir. 2017) (holding that 42 U.S.C. § 1988 did not apply and that survival of the action was governed by federal common law); *Revock*, 853 F.3d at 105 (3d Cir. 2017) ("[W]e conclude that Section 1988(a) does not apply to the issue of whether a Fair Housing Act claim survives the death of a party. Rather, we apply a uniform rule of federal common law."); *Fleming v. U.S. Postal Service AMF O'Hare*, 27 F.3d 259, 262 (7th Cir. 1994) (holding that the 42 U.S.C. § 1988(a) does not apply to two modern civil rights statutes -- Title VII and the Rehabilitation Act of 1973 -- because "these statutes are not affected by 42 U.S.C. § 1988(a)").

[11] *See, e.g.*, *Kulling v. Grinders for Indus., Inc.*, 115 F. Supp. 2d 828, 845 (E.D. Mich. 2000) (declining to apply § 1988(a) because "the ADEA lacks any provision analogous to § 1988, which expressly invites the courts to look to state law where federal law is 'deficient'"); *Kettner v. Compass Group USA., Inc.*, 570 F. Supp. 2d 1121, 1128 (D. Minn. 2008).

[12] *See, e.g.*, *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1118–20 (N.D. Cal. 2013) (holding that: (1) § 1988(a)'s text plainly and unambiguously does not extend to Title IX actions; and (2) no evidence supports an inference that § 1988(a)'s limitations are due to legislative oversight in failing to update § 1988); *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1101 (S.D. Cal. 2017) (following *Lopez* and determining that federal common law applies to survival actions derived from the Affordable Care Act).

leads to the conclusion that § 1988(a) does not extend to laws unenumerated in its text.  Therefore, we are in agreement with Wheeler that because the ADA and RA are not listed in § 1988(a), California's survivorship law does not govern his claims under those statutes.

In so ruling, we have considered that some circuits do apply § 1988(a) to civil rights statutes not explicitly listed.[13] However, we are not persuaded by their doing so.  None of those opinions engage in any analysis of the actual statutory language of § 1988(a).  Rather, they proceed apparently "under the unsupported assumption that it applies broadly to any and all actions that could be characterized as sounding in 'civil rights.'"  *Lopez v. Regents of Univ. of Cal.*, 5 F. Supp. 3d 1106, 1118 (N.D. Cal. 2013) (quoting *Kettner v. Compass Group USA., Inc.*, 570 F. Supp. 2d 1121, 1131–32 (D. Minn. 2008)).

Having determined that § 1988 does not apply to the ADA and RA, we now address Wheeler's further contention that a uniform federal common law rule of survivorship

---

[13] *See, e.g.*, *Slade for Estate of Slade v. U.S. Postal Serv.*, 952 F.2d 357, 360 (10th Cir. 1991) (holding that § 1988(a) governs survival of Title VII actions); *J.S. ex rel. Duck v. Isle of Wight Cnty. Sch. Bd.*, 402 F.3d 468, 474 (4th Cir. 2005) (holding that because the RA is a civil rights statute, § 1988 governs the applicable statute of limitations); *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5th Cir. 1998) (holding that § 1988(a) governs the selection of the applicable statute of limitations for the ADA and RA); *see also Hutchinson on Behalf of Baker v. Spink*, 126 F.3d 895, 898 (7th Cir. 1997) ("[W]hether by incorporation through federal common law or more directly (a question we need not resolve here), state law governs the survival of statutory civil rights actions like the ADA claim asserted in Count II of the complaint.") (citing *Slade*, 952 F.2d at 360).  These cases summarily conclude that § 1988(a) applies to all civil rights legislation without discussing the textual limitations of § 1988(a).

should be applied. "As Congress has not provided statutory guidance, we resolve the survival issue according to federal common law," *Revock*, 853 F.3d at 108, "when, as here, there is no expression of contrary [Congressional] intent." *Guenther*, 846 F.3d at 982 (citation omitted). When addressing a particular legislative gap, a federal court's determination whether to fashion a nationwide uniform federal rule or to adopt state law as the federal rule of decision "is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728 (1979) (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 310 (1947)) (discussing how courts should "fill the interstices of federal legislation"). "[S]tate law should not be incorporated where doing so would 'frustrate specific objectives of the federal programs.'" *Guenther*, 846 F.3d at 982–83 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991)).

Courts have consistently applied a uniform federal law to the survival of various federal claims. *See Revock*, 853 F.3d at 108–09 (discussing cases where courts applied a uniform rule of survivorship to various types of federal claims). We apply a uniform federal rule of survivorship here as well, as "Congress declared its interest in passing the ADA was to 'provide a clear and comprehensive national mandate' with '*clear, strong, consistent,* [and] *enforceable* standards' to address the 'serious and pervasive social problem' of disability-based discrimination on a case-by-case basis." *Guenther*, 846 F.3d at 983 (emphasis in *Guenther*) (quoting 42 U.S.C. § 12101(a)(2), (b)(1)–(2)). Likewise, the RA was enacted "to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially

individuals with significant disabilities," in order "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." 29 U.S.C. § 701(b).

With regard to the content of a uniform federal rule, we note that under federal common law, federal claims typically survive a decedent's death if they are remedial in nature and not penal. *Ex parte Schreiber*, 110 U.S. 76, 80 (1884) ("At common law, actions on penal statutes do not survive."); *Revock*, 853 F.3d at 109; *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 876 (11th Cir. 1986); *E.E.O.C. v. Timeless Invests., Inc.*, 734 F. Supp. 2d 1035, 1056–57 (E.D. Cal. 2010); *Lopez*, 5 F. Supp. 3d at 1119–20 ("Claims for non-economic compensatory damages in the form of pain and suffering, emotional distress, and the like, are not punitive and therefore survived [plaintiff]'s death."). Here, the purposes of the ADA and RA are remedial: the goals of both acts were to promote the rights of disabled individuals and to provide compensation when they experienced discrimination. 42 U.S.C. § 12101; 29 U.S.C. § 701; *see also Guenther*, 846 F.3d at 984 (discussing the ADA's "broad remedial purpose"). Therefore, the ADA and RA compensatory claims do not abate due to Colbert's death, although the punitive claims do. *See Guenther*, 846 F.3d at 986 (citing *Kettner*, 570 F. Supp. 2d at 1133–34) (holding that remedial ADA claims survive).

That being said, Wheeler cannot bring his asserted ADA and RA claims on behalf of Colbert. He has provided no authority supporting the proposition that an individual without a legal relationship to the decedent – such as an adopted-out biological child – could bring survival claims under a uniform federal law. Wheeler's case stands in marked contrast to others where the legal status of the

familial relationship or the decedent's estate was not disputed, nor was their ability to bring any claims that survived the decedent.[14]   As Wheeler has provided no support for his argument, we will refrain from expanding the limits of who federal common law would permit to bring suit.  *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  For these reasons, we affirm dismissal of the ADA and RA claims.

C. *Wheeler Cannot Assert Fourteenth Amendment Claims for Loss of Colbert's Companionship.*

Wheeler states – and Santa Clara agrees – that no federal case law addresses the Fourteenth Amendment liberty interests of a decedent's adopted-out biological child. Wheeler contends, however, that his relationship with Colbert can support a Fourteenth Amendment loss of companionship claim.  We are not persuaded by Wheeler's arguments.

A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment.  *Hayes*, 736 F.3d at 1229–30; *Moreland*, 159 F.3d at 371.  Even though state law typically governs legal familial relationships – including the inheritance of property, adoption, child custody, marriage, and divorce – the Federal Constitution in some cases supersedes state law and provides greater protection for

---

[14] *See, e.g.*, *Guenther*, 846 F.3d at 981 (special administrator of decedent's estate continuing ADA action on his behalf); *Revock*, 853 F.3d at 103 n.6 (personal representative substituted for deceased plaintiff according to Fed. R. App. Proc. 43(a)); *Kilgo*, 789 F.2d at 864 (substitution of husband who was the personal representative of decedent's estate); *Prescott*, 265 F. Supp. 3d at 1100 (permitting mother to bring Title IX claims as her decedent child's representative).

certain family relationships. *Lehr v. Robertson*, 463 U.S. 248, 256–58 (1983) (discussing the Fourteenth Amendment rights of an unwed biological father); *see also Smith v. Fontana*, 818 F.2d 1411, 1419 (9th Cir. 1987) (holding that loss of companionship claims can be asserted even after a child reaches the age of majority), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999). In the context of parent-child relationships specifically, the Supreme Court has emphasized that the rights of parents are a counterpart of the responsibilities they have assumed: "the mere existence of a biological link does not merit equivalent constitutional protection." *Lehr*, 463 U.S. at 261. Judicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and "stem[] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children." *Id.* at 256–61; *see also Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016) (discussing the Fourteenth Amendment rights of an unwed biological father). Although case law mostly addresses this issue from the perspective of the parent's rights rather than the child's, children's Fourteenth Amendment rights to companionship with their parents have been interpreted as reciprocal to their parents' rights. *Fontana*, 818 F.2d at 1418–19; *see also Hayes*, 736 F.3d at 1229. In sum, even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections at issue here.

In this case, Colbert surrendered Wheeler for adoption as an infant – choosing to legally sever her relationship with him and to give up all rights and responsibilities related to

his care – and he was adopted by other parents.  In his complaint, Wheeler asserts that he had a "close relationship with Ms. Colbert during part of his childhood and throughout his adult life."  That allegation is not sufficient to support a loss of companionship claim in the case before us.  Few close relationships – even between blood relatives – can serve as a basis for asserting Fourteenth Amendment loss of companionship claims.  *See Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) (finding siblings could not maintain a claim for loss of their brother's companionship).  Wheeler does not allege that Colbert raised him, otherwise resumed responsibility for his upbringing, or even maintained consistent contact with him during his childhood.  *See Lehr*, 463 U.S. at 261–62 (holding that biological father's failure to have significant custodial, personal, or financial relationship with his daughter and to pursue legal ties to her until she reached age two meant that he was not entitled to full Fourteenth Amendment protection of his relationship with her).

Without citation to any authority, Wheeler asserts that in light of evolving parenting and childrearing arrangements, this court should find that his relationship with Colbert constitutes a foundation for a loss of companionship claim despite his adoption as an infant.  We decline that invitation.  In doing so, we acknowledge that there has been an evolution in both adoption practices and "non-traditional" relationships and that the appropriate case may net a different result.  We confine our holding to the case before us, arising from the particular nature of Wheeler and Colbert's relationship as alleged.  Questions concerning *all* adopted-out children or those raised in non-traditional family arrangements are not before us today.  Nor should this opinion be read to foreclose a case involving a true parent-

child relationship in a different context where a constitutionally protected right may exist.

In short, the relationship between Colbert and Wheeler, as alleged here, did not have the structure of parental relationships protected by the Fourteenth Amendment. *See Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 844–45 (1977) (emphasizing "the role [parenting] plays in promoting a way of life through the instruction of the children") (citation and internal quotation marks omitted); *Glona v. Am. Guar. & Liab. Ins. Co.*, 391 U.S. 73, 74–75 (1968) (holding that mother could recover for wrongful death of illegitimate, dependent child); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The private interest here, that of a man in the children he has sired *and raised*, undeniably warrants deference and, absent a powerful countervailing interest, protection." (emphasis added)). Wheeler failed to state a viable claim under the Fourteenth Amendment for loss of companionship with Colbert, and thus the district court's determination of this issue is affirmed.

D. *The District Court Did Not Abuse Its Discretion by Denying Leave to Amend.*

Wheeler contends that the district court abused its discretion when it refused to grant leave to amend the complaint. He argues that denying him the opportunity to open an estate in probate, name a representative, and replace the "John Doe 1" personal representative with the newly appointed one is erroneous because the personal representative of Colbert's estate would be a proper plaintiff. Furthermore, Wheeler alleges that the court did not discuss the request for leave to amend the complaint in its order.

We do not discern merit in Wheeler's contention; the court did discuss the request for leave to amend the complaint in its order, stating that the request was denied as futile. Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). In survival actions, plaintiffs have the burden to prove proper standing. *See Hayes*, 736 F.3d at 1228–29.

Even assuming arguendo that Wheeler could have been appointed the personal representative, he was not Colbert's personal representative at the time of dismissal. Further, Wheeler provides no authority that suggests a "John Doe," as yet nonexistent personal representative plaintiff can serve as a placeholder for hypothetical proper plaintiffs.

In any event, the newly named personal representative would be a new party for purposes of the relation-back doctrine, and relating back would be time-barred. Because § 1983 has no specific statute of limitations, federal courts borrow state statute of limitations for personal injury actions. *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (citing *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993)) (borrowing California's statute of limitations for personal injury actions in § 1983 suits). Because California's statute of limitations for personal injury actions is two years, it would have been too late for the newly appointed personal representative to assert claims on Colbert's behalf under California law. C.C.P. § 335.1; *see MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1101–02 (C.D. Cal. 2009) (plaintiff's survival action in §1983 case was time-barred where she had not perfected her representative capacity to bring the survival claim and the limitations period had lapsed

in the interim).[15] Thus, amending the complaint would have been futile. For these reasons, the district court did not abuse its discretion in denying leave to amend.

## CONCLUSION

California's survival statute is consistent with 42 U.S.C. § 1983, and thus applies to the instant action. As Wheeler indisputably does not meet the requirements for standing under California law, he cannot assert § 1983 claims on behalf of Colbert. Further, although federal common law applies to the ADA and RA claims, Wheeler is still not an appropriate plaintiff for a survival action based on those laws. Wheeler also cannot bring a claim for loss of companionship with Colbert because they did not have the kind of parent-child relationship entitled to this type of constitutional protection. Finally, because no proper plaintiff existed at the time of the district court's ruling, denying leave to amend the complaint was not an abuse of discretion. Therefore, we affirm the district court's decision.

**AFFIRMED.**

---

[15] Wheeler contends that *MacEachern* is distinguishable because that plaintiff was only bringing suit in her individual capacity. While the plaintiff in that case had failed to properly plead her representative capacity and had not complied with California's procedural requirements for establishing that she was the decedent's successor in interest, she was pursuing Fourth Amendment survival claims and the *MacEachern* court analyzed her standing in that light. *MacEachern*, 623 F. Supp. 2d at 1101–02. Thus, the case is on point.

WARDLAW, Circuit Judge, concurring in opinion:

While Wheeler does not and cannot allege a viable claim, I wish to emphasize what this opinion does not hold. We do not hold that no adopted-out child could prove he had a protected interest in his relationship with his biological parent under the Fourteenth Amendment. We no longer live in a world of conventional families with two heterosexual parents and only one mother. Some children have two mothers in a same-sex marriage; some children have two mothers because their heterosexual parents got divorced and remarried; and in fact, there are some children who have even more than two mothers. The intimate relationship between a parent and child is not limited by number; it is a practice, dependent on intimacy and association over time. Whether we approve or disapprove of these developing alternative family structures is irrelevant. There is no reason why an adopted-out child could not have had a "deeply loving and interdependent relationship" with both his adoptive and his biological mother under other circumstances. *Spielman v. Hildebrand*, 873 F.2d 1377, 1384 (10th Cir. 1989) (quoting *Smith v. Org. of Foster Families For Equal. & Reform*, 431 U.S. 816, 844 (1977) ("*OFFER*")).

As the Supreme Court has said, "the importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children, as well as from the fact of blood relationship." *OFFER*, 431 U.S. 816, 844 (1977) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 231–33 (1972)) (original alterations omitted). The Fourteenth Amendment is not constrained by state laws governing legal relationships. Instead, it is the

actual relationship that society recognizes as worthy of respect and protection, that animates the constitutional claim. *Lehr v. Robertson*, 463 U.S. 248, 259–62 (1983). In an earlier era, our law focused on legal formalities before actual relationships. For example, the fathers of illegitimate children once lacked secure, constitutionally recognized rights. Homer H. Clark, The Law of Domestic Relations in the United States, § 21.2 (2d ed. 1987); *see also Stanley v. Illinois*, 405 U.S. 645, 657–58 (1972).

That was yesterday. The moral consensus that insisted on confining procreation within marriage has dissipated along with traditional notions of parent and child. And both the Supreme Court and the Circuit Courts have expanded familial protections based on the special, intimate and loving relationship between parent and child. *Glona v. Am. Guarantee & Liab. Ins. Co.*, 391 U.S. 73, 74–75 (1968); *Stanley*, 405 U.S. at 651; *Moore v. City of East Cleveland*, 431 U.S. 494 (1977) (extending Supreme Court principles protecting the parental role in raising children to protect a broader set of relationships within the family structure and invalidating under substantive due process a zoning ordinance preventing grandmother and grandson from living together in certain circumstances); *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (holding that parents have constitutional rights to loss of companionship of adult children); *Spielman*, 873 F.2d at 1385 (holding that pre-adoptive parents have a sufficient liberty interest to be afforded some level of due process protection). "This principle rests on a practical recognition that biology and association can together establish a relationship between father and child that may be essential to the happiness of both," even if the formality of a legal relationship is missing. *Pena v. Mattox*, 84 F.3d 894, 899 (7th Cir. 1996).

As we noted, the loss of companionship under the Fourteenth Amendment applies as equally to a child's loss of a parent as it does to a parent's loss of a child. *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999); *see Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). In fact, in *Smith*, we reasoned that a child's interest is likely stronger than a parent's interest because parents can have more biological children whereas children cannot have more than one set of biological parents. *Smith*, 818 F.2d at 1418 n.10. The cases that exclude other blood relatives from asserting a Fourteenth Amendment claim for loss of companionship do not preclude biological parents or children from asserting this claim. *See Ward v. City of San Jose*, 967 F.2d 280, 283–84 (9th Cir. 1991) (siblings do not have a constitutional right to loss of companionship).

Thus, in holding that Wheeler does not have a protected interest, we conclude only that he was unable to demonstrate that he had a protected relationship with his mother.